**SEABOARD SURETY COMPANY, a New York Corp., and Hansen & Rowland, Inc., a Washington Corp., Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 17618.**

United States Court of Appeals Ninth Circuit.

July 24, 1962.

Skeel, McKelvy, Henke, Evenson & Uhlmann, William E. Evenson, Jr., and William F. Baldwin, Seattle, Wash., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., Brockman Adams, U. S. Atty., and Thomas H. S. Brucker, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before POPE, BARNES and BROWNING, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal from a judgment entered by the United States District Court directing the clerk of the court to pay appellee $28,673.16 from the funds in the registry of the court, and giving judgment against appellants in the amount of $1,903.02. Jurisdiction was conferred upon the district court by §§ 1335 and 2463, Title 28 United States Code, and § 7403, Title 26 United States Code.

Judgment for appellee was entered on September 5, 1961. A timely notice of appeal was filed. This court has jurisdiction to review the judgment entered below under the provisions of §§ 1291 and 1294(1), Title 28 United States Code.

We note that Seaboard and Hansen & Rowland appeal from the judgment, but that defendant creditors have not appealed from the judgment granting appellee priority over their claims.

This was an action in interpleader brought by appellants, interpleading plaintiffs below, to determine the relative rights of various creditors, including appellee, in and to certain funds representing the profit from a completed construction job of Poland & Pfaff, Inc. (hereinafter referred to as "taxpayer").

On or about December 31, 1956, taxpayer was awarded a government construction contract. Taxpayer and C & R Builders, Inc. (hereinafter referred to as "C & R"), a joint venturer, on December 31, 1956 made application to appellant Seaboard Surety Company (hereinafter referred to as "Seaboard") for the issuance of a performance bond, and a payment of labor and material bond. As a condition to issuance of the bonds, Seaboard required "standby" agreements to be obtained from taxpayer's existing creditors.[1] Appellee, although a creditor,[2] was not requested to nor did it participate in any such agreement. None of the aforementioned creditors had any claim or debt due from taxpayer arising out of the government contract.

[1]. Whose claims or debts arose prior to December 31, 1956, some of whom were defendants below. By signing these agreements, the creditors promised not to take legal action against taxpayer until one year after the completion of the government contract; and taxpayer agreed to pay those creditors which signed these agreements on a pro rata basis after the expenses of the job were satisfied.

[2]. Taxpayer, an Alaska Corporation, had employees before December 31st, 1956. On account of this employment and the payment of wages, assessments were duly made for the quarters ended September 30, 1956 and December 31, 1956 of the amount deducted and withheld by taxpayer from wages as the collection of taxes upon the income of its employees (i. e., withholding taxes). The District Director of Internal Revenue for the District of Seattle gave notice of each of these assessments to, and demanded payment of, the amount thereof from taxpayer. The District Director filed the notices of tax liens with the United States Commissioner at Fairbanks, Alaska. The amount of taxes and the penalty or interest included in each assessment, or both, the dates of filing of notices of tax liens, the amount of any payment and the amount of the unpaid balance of the assessments, are as follows:

| Type of Tax | Tax Period | Amount Outstanding | Date Assessment List Received | Notice and Demand Issued | Notice of Tax Lien Filed |
|---|---|---|---|---|---|
| Withholding | 9–30–56 | $21,440.31 | 11–15–56 | 11–15–56 | 12–18–56 |
| Withholding | 12–31–56 | 2,340.00 | 2–28–57 | 2–28–57 | 5– 6–57 |
| | | $23,780.31 | (plus accrued interest as provided by law) | | |

On March 2, 1957, a trust agreement (Ex. 1) was executed by taxpayer, C & R, Seaboard, the University Branch of the Pacific National Bank of Seattle (hereinafter referred to as "Pacific National"), and appellant Hansen & Rowland, Inc. (hereinafter referred to as "Hansen & Rowland"). The trust instrument's preamble states that the proceeds of taxpayer's government contract were assigned [3] to Pacific National.[4]

The contract was performed and all claims arising therefrom were satisfied as of May 27, 1959. The balance in the trust account was $31,171.16 which sum is the "remaining funds" referred to in paragraph (i) of the trust agreement (set forth in footnote 4, supra).

On or about July 31, 1958, appellee through its District Director of Internal Revenue for the Seattle District, caused a Notice of Levy (Form 668–A) to be served upon Hansen & Rowland showing a total amount (including interest) of $28,006.08 then due on appellee's liens. On or about August 15, 1958, appellee,

through its same agent, caused a Final Demand (Form 668–C) to be served on Hansen & Rowland and on Seaboard.

Faced with competing claims of creditors and appellee to the profits of taxpayer from its government contract, appellants brought the interpleader action on May 29, 1959, against the creditors and appellee as defendants, asking the court to determine their respective rights to the aforementioned fund.[5]

Appellants expressly disclaimed any interest in or right to the deposited fund of $28,673.16 for their own interest, except that they alleged that the trust account was "primarily" subject to the costs and expenses of these proceedings, the reimbursement to them for all their costs and expenses to be incurred therein, and to the payment of all beneficiaries of the trust account and defendants which otherwise on any account would have any claim against appellants or either of them.

The defendant creditors, represented by their own attorneys, fully participated

---

3. The district court found and concluded that this assignment (Ex. 5) did not in fact take place until April 8, 1957.

4. The operative provisions of the trust agreement here material are, in substance, as follows:

1. The taxpayer and Pacific National assigned and transferred all monies received, due or to become due Pacific National under its assignment of the government contract to Seaboard, Seaboard being authorized to receive all checks, warrants, and other instruments in payment of the contract and to endorse and deposit them in a trust account with the trustee.

2. The money held by the trustee was to be disbursed in payment of the costs and expenses directly and indirectly chargeable against the government contract.

3. In the event of default on the part of taxpayer, or on account of non-payment of claims for labor and materials, Seaboard was to have authority to use the balance of monies in the possession of the trustee for the purpose of completing the government contract and of paying any obligations which Seaboard may have been required to pay on account of the execution of the bonds.

4. Paragraph (i) of the trust agreement provided in part, that after payment of all expenses incurred in performance of the government contract including advances made by Pacific National and certain expenses of Seaboard and the trustee:

"The remaining funds * * * shall be paid to creditors of [taxpayer], in such amounts as are indicated in statement of [taxpayer] dated December 31, 1956, or such agreed revision as may later be made between [taxpayer] and its creditors properly certified to Trustee. Any residual amount shall be paid to [taxpayer] when the time for bringing suit against [Seaboard] shall have expired and all claims and suits against [Seaboard] by reason of the operations of [taxpayer] under bonds past or present of [Seaboard] shall have been terminated."

5. Appellants did not, however, deposit in the registry of the court the full amount of the balance in the trust account of $31,173.16 but, instead, deposited in the registry of the court $28,673.16, and retained $2,500 for attorneys' fees in the action and for estimated costs of the action.

in the proceedings below. Appellee moved to dismiss the action against it and intervened to enforce its tax liens. The essential facts were admitted on pretrial order, and based upon the facts above stated, the district court entered the following Conclusions of Law:

(1) That a lien for taxes under Section 6321 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6321 attaches to all "property and rights to property belonging to a taxpayer." However, rights under an executory bilateral contract are not property or rights to property within the scope of Section 6321 unless and until the agreed exchange under the bilateral contract has been performed and a right to payment has been earned.

(2) That under Washington law there was no valid legal or equitable assignment to defendant creditors or an interest in the fund to be created from performance of the government contract.

(3) That when the fund referred to in paragraph (i) of the trust agreement came into existence after prior claims to the proceeds of the government contract were paid, the tax lien of appellee attached to and had priority over the claims of defendant creditors.

(4) That under the rule announced in United States v. Liverpool & London & Globe Insurance Co., 1954, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268, appellants were not entitled to priority over the claim of appellee for the expense incurred in bringing this action.

(5) That appellee (the intervenor) is entitled to a judgment and decree declaring that the priorities and the rights to payments from the trust account (which fund totaled $31,173.16 as of May 27, 1959) are as follows:

First Priority: The tax liens of appellee in the sum of $23,780.31 plus interest at the rate of six per cent on $21,440.31 from November 15, 1956 to date in the amount of $6,164.07 plus interest at said rate on $2,340.00 from February 28, 1957 to date in the amount of $631.80 (totaling $30,576.18).

Second Priority: The costs and attorneys' fees of appellants.

Third Priority: The priority and amounts of each of the several defendant creditors were not established, as the funds which are the subject of this interpleader action will be insufficient to satisfy the second priority.

(6) That appellee is entitled to an order directing the clerk of the district court to pay it $28,673.16 from the funds in the registry of the court.

(7) That appellee is entitled to judgment against Seaboard and Hansen & Rowland in the amount of $1,903.02. (This represents the difference between the total amount due the government and the amount deposited by the Trustee.)

(8) That appellants are entitled to judgment for costs and attorneys' fees in the amount of any balance remaining in their possession originating from the trust account after payment of the judgment in favor of appellee ($2,500 less $1,903.02, or $596.98).

An agreed computation of the interest due on the tax liens was made. On September 5, 1961, the district court entered judgment which followed in its terms the above Conclusions, i. e., the clerk was directed to pay appellee $28,-673.16 from the funds in the registry of the court, and appellee was given judgment against appellants in the amount of $1,903.02. Appellants were awarded the balance of $596.98.

Appellants set forth seventeen specified errors upon which they rely in this court. For reasons set forth below, however, we believe only those errors which touch upon that part of the judgment granting appellee judgment against Seaboard and Hansen & Rowland in the amount of $1,-903.02 are properly to be considered by this court.

In their complaint appellants stated:

" * * * Plaintiff trustee is ready, willing and able to pay the balance of said fund over to the clerk of this court or as this court by its judgment may otherwise direct. *Plaintiffs disclaim any interest in or right to said balance of said account for their own interests,* except that

plaintiffs allege said account is primarily subject to the costs and expenses of these proceedings, the reimbursement of plaintiffs for all their costs and expenses to be incurred herein, and to the payment of all beneficiaries of said trust account and defendants which otherwise on any account would have any claim against the plaintiff or either of them." (Emphasis added.)

■■ This partial disclaimer was repeated in the Partial Pretrial Order and the Findings of Fact. Thus, appellants disclaimed any interest in the deposited fund. The district court found they had no interest in the fund. Under these circumstances, we rely on the rule that a party who has no interest in a fund cannot appeal from an order disbursing that fund.[6] Defendant creditors below, who are the only parties affected by that portion of the judgment, had the right to appeal to protect their interests. They did not do so. Appellants have no right or power to represent the interests of others on appeal. Therefore, appellants' appeal must be dismissed insofar as it attempts to review the judgment of the district court awarding $28,673.16 to appellee.

Appellants are hence confined to questioning that part of the judgment entered against them granting appellee the sum of $1,903.02; this money will be paid from appellants' pockets, not from the fund, but only because appellants "pocketed" attorneys' fees before filing suit.

Since the right of appellee to the $1,903.02 depends upon its lien upon the full amount of taxpayer's profits from the construction contract, the validity of that lien is determinative of the issue between the parties.

■ The undisputed facts show that as of and prior to the date of the trust agreement, appellee had a fully perfected tax lien upon all property and rights to property of the taxpayer, in the sum of $21,440.31 plus interest from November 15, 1956, and $2,340 plus interest from February 28, 1957. These liens, arising upon assessment under Section 6321 of the Internal Revenue Code of 1954, continue in full force and effect until the tax liability is extinguished (26 U.S.C. § 6322) and attach to all after-acquired property of the taxpayer. Glass City Bank of Jeanette, Pa. v. United States, 1945, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56. These tax liens attached immediately to all rights of taxpayer under the government contract awarded December 31, 1956, including payments whenever earned. On December 31, 1956, and up to March 2, 1957, (the date of the trust agreement) appellee had a prior lien ahead of all of other creditors. None of the other defendant creditors had any liens upon the property of taxpayer, and no lien upon the rights of taxpayer in the government contract. Appellee was the only creditor with a lien upon these rights. Hence, it follows that the trust agreement of March 2, 1957, could not displace the tax liens, which had already attached to taxpayer's property rights in the contract. The fact that taxpayer's rights under the contract were dependent upon its performance did not affect the tax liens, as far as the defendant creditors are concerned. Glass City Bank of Jeanette, Pa. v. United States, supra. The tax liens were subject only to a prior,

6. Spriggs v. Stone, 1949, 85 U.S.App.D.C. 95, 174 F.2d 671 ("[An executor] cannot appeal for the protection of the interests of particular devisees or legatees who are able to protect themselves by taking an appeal of their own.") In re Michigan-Ohio Building Corporation, 7 Cir. 1941, 117 F.2d 191 ("Speaking more specifically, a party has an appealable interest only when his property may be diminished, his burdens increased or his rights detrimentally affected by the order sought to be reviewed."); King v. Buttolph, 9 Cir. 1929, 30 F.2d 769 ("It is fundamental that an appellant must either have or represent an interest in the subject-matter of the appeal, and it is generally held that, where it does not appear that the administrator has an interest in a controversy and he is the only party asking a review of the judgment, the appeal should be dismissed."). See also, 2 Am. Jur., Appeal and Error, § 150; 4 C.J.S. Appeal and Error § 177.

choate lien upon these rights. Alleged beneficial interests of the creditors in this case arose after the tax liens and are subordinate to the tax liens. United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520; United States v. Christensen, 9 Cir. 1959, 269 F. 2d 624.[7]

 Appellee had a prior choate tax lien upon any profits of taxpayer under the government contract, and this prior tax lien was superior to the then existing non-lien creditors of taxpayer, and appellee's priority was not in any way displaced or affected by the agreement of March 2, 1957. Appellee was entitled to payment of its lien totaling $30,576.18, inclusive of interest, out of the funds in the hands of appellants as of May 27, 1959. Appellants could not diminish appellee's lien by withholding from the fund an amount to cover their attorneys' fees and costs of the interpleader action made necessary by competing claims of other creditors which were junior to the tax liens of appellee.

 It appears, from appellants' complaint, that appellants, in the district court, contended that they were entitled to attorneys' fees and expenses for the preparation and filing of this action and for the prosecution of these proceedings. The district court regarded their claims as being "for the expenses incurred in bringing this action." Appellants now contend that their claims are for the expenses of the administration of the trust apart from the prosecution of the interpleader action. It is settled law that the lien of appellee's is superior to the attorneys' fees and costs of an interpleader.[8]

 In the district court, appellants did not contend and made no offer of proof that they had incurred legal expenses for matters not related to the preparation and prosecution of the instant case. They cannot do so here. Factual issues cannot be raised for the first time on appeal. Carr v. City of Anchorage, 9 Cir. 1957, 243 F.2d 482.

We affirm the judgment awarding $1,-903.02 to appellee. Appellants' appeal from that portion of the district court's judgment directing the clerk of the court to pay to appellee those funds which had been placed in the registry of the court by appellants as interpleaders is dismissed.

7. The case of In re Halprin, 3 Cir. 1960, 280 F.2d 407, does not stand for the proposition it is cited for by appellants, since it involved only the priority of a person financing the contract out of which the taxpayer would earn any property subject to the federal tax lien. In this case, the only creditor in that position is Pacific National, and its priority is not in dispute. Defendant creditors in this case had nothing to do with financing the construction contract. Their claims are for indebtedness incurred by taxpayer prior to December 31, 1956. At that time, and up until March 2, 1957, the defendant creditors were junior to appellee's tax lien. The fact that defendant creditors agreed to forbear from suit in return for a promise that they would be paid out of the profits of the contract does not give them priority over appellee. At the time of the March 2, 1957 agreement, defendant creditors were no more than general creditors of taxpayer, junior in every respect to appellee's tax lien. They cannot contract away appellee's tax lien. At the most, the trust agreement of March 2, 1957,

so far as defendant creditors are concerned, conferred upon them an inchoate, future interest.

8. In United States v. Liverpool & London & Globe Ins. Co., 1955, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268, a garnishment action, the Court held that the tax lien was prior to the garnishment lien and that "[fees in the garnishment] proceeding are not prior to the Government liens, and the authorization of the payment of the attorneys' fees prior to the Government liens was error." In United States v. R. F. Ball Construction Co., 1958, 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510, an interpleader action, the Court said: "The claim of the interpleader for its costs is controlled by United States v. Liverpool & London & Globe Ins. Co., [supra]." In United States v. Chapman, 10 Cir. 1960, 281 F.2d 862, the court held that the tax lien of the United States could not be diminished by the attorneys' fees and costs, and that the interpleader would have to look to other parties for its costs.