**ATLANTIC NATIONAL BANK**

v.

**The UNITED STATES.**

**No. 30–75.**

United States Court of Claims.

June 16, 1976.

H. Joel Weintraub, attorney of record, and Maurice Steingold, Norfolk, Va., for plaintiff. Steingold, Steingold & Friedman, Norfolk, Va., of counsel.

Leslie H. Wiesenfelder, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before SKELTON, KASHIWA and BEN-NETT, Judges.

## ON DEFENDANT'S MOTION FOR SUM-MARY JUDGMENT AND PLAIN-TIFF'S CROSS MOTION FOR SUM-MARY JUDGMENT

KASHIWA, Judge.

This case is before the court on cross motions for summary judgment. There is no genuine issue as to any material fact. The case involves the priority of federal tax liens over plaintiff-assignee's claim to contract proceeds. For the reasons below we hold for the defendant.

The General Services Administration (GSA) awarded contracts to Argus Security, Inc. (Argus), for the performance of uniform guard services. By June 4, 1974, the Internal Revenue Service (IRS) had filed Notices of Federal Tax Lien Under Internal Revenue Laws relating to Argus as follows:

| Amount of lien | Date filed with State Corporation Commission, Richmond, Virginia |
|---|---|
| $53,870.27 | March 21, 1974 |
| 32,702.75 | June 4, 1974 |
| $86,573.02 | |

On June 5, 1974, and July 9, 1974 Argus made assignments to plaintiff of proceeds to be paid under its contracts. A more complete chronology of events is listed in the margin.[1] As of January 31, 1976, Ar-

1. July 19, 1973—GSA awarded Contract number GS–03B–18175 to Argus.

February 1, 1974—GSA awarded Contract number GS–03B–18245 to Argus.

February 14, 1974—GSA awarded Contract number GS–03B–18244 to Argus.

March 21, 1974—IRS filed a notice of federal tax lien at Norfolk and Richmond, Virginia, for $53,870.27.

May 6, 1974—GSA awarded Contract number GS–03B–18336 to Argus.

May 14, 1974—IRS served a notice of levy on GSA stating that there was due, owing, and unpaid from Argus $60,803.46.

May 16 and June 4, 1974—IRS filed a notice of federal tax lien at Norfolk and Richmond, respectively for $32,702.75.

May 29, 1974—GSA awarded Contract number GS–03B–18385 to Argus.

gus' unpaid tax liability arising out of the two notices of tax lien filed by June 4, 1974, totaled $78,527.93. The total due under the Argus contracts is $43,739.09.[2]

■ Plaintiff first argues that the tax liens did not attach to the contract proceeds when the liens were filed because at that time the monies were not yet earned. Plaintiff contends that when the monies were earned, they were immediately encumbered by plaintiff's perfected security interest.

Section 6321, Int.Rev.Code of 1954, provides that upon refusal to pay a tax after demand, a lien arises in favor of the United States "upon all property and rights to property, whether real or personal," belonging to the delinquent taxpayer. Argus had a right to, and interest in, the monies due or to become due under the subject contracts to enable a federal tax lien to attach thereto. Even after the assignments to plaintiff, Argus retained a sufficient interest to which a federal tax lien could attach. In *Texas Oil & Gas Corp. v. United States,* 466 F.2d 1040, 1052 (5th Cir. 1972), *cert. denied,* 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973), the court held:

    \* \* \* a federal tax lien attaches immediately to after-acquired property without any further action required by the Government.

It has also been held that the fact that the taxpayer's right to contract proceeds was dependent on his satisfactory performance

does not mean that the proceeds were not property or rights to property of the taxpayer under § 6321. In *City of Vermillion v. Stan Houston Equipment Co.,* 341 F.Supp. 707, 713 (D.S.D.1972), the court stated:

    The fact that the taxpayer's right to the proceeds of the contract was dependent upon his performance of the contract and acceptance by the City does not mean that the proceeds were not property or rights to property of the taxpayer under 26 U.S.C.A. Sec. 6321. *Seaboard Surety Co. v. United States,* 306 F.2d 855, 859 (9th Cir. 1962); *Home Ins. Co. v. B. B. Rider Corp.,* 212 F.Supp. 457, 462 (D.C.N. J.1963). The taxpayer had more than a mere contingent right to the proceeds of the contract.

See *Glass City Bank v. United States,* 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945); *Corwin Consultants, Inc. v. Interpublic Group of Companies, Inc.,* 375 F.Supp. 186, 193 (S.D.N.Y.1974), reversed and remanded on another question, 512 F.2d 605 (2d Cir. 1975); *United States v. Blackett,* 220 F.2d 21 (9th Cir. 1955). Clearly under § 6321 we must hold that plaintiff's argument cannot be sustained.

In *Glass City Bank v. United States, supra,* 326 U.S. at 267–69, 66 S.Ct. at 110, the Court stated that there "is a plain intent to subject to the lien 'property owned by the delinquent' when suit is filed, rather than only that owned when the lien arose" and

June 5, 1974—Argus assigned to plaintiff "all monies due or to become due from the United States" under Contract numbers GS–03B–18175, GS–03B–18244, and GS–03B–18245. The assignments contained a warranty that the assignor is not indebted to the United States for taxes and is not otherwise engaged in a controversy with the United States which might give rise to a claim of a right to set-off.

June 19, 1974—GSA received and acknowledged receipt of three documents entitled "Notice of Assignment."

June 20, 1974—IRS filed a notice of federal tax lien at Norfolk and Richmond for $52,034.22.

July 9, 1974—Argus assigned to plaintiff the monies due under Contract numbers GS–03B–18336 and GS–03B–18385.

July 11, 1974—GSA received and acknowledged receipt of two documents entitled "Notice of Assignment."

July 29, 1974—Effective on this date, the five contracts were terminated by written agreement in accordance with an oral agreement of GSA and Argus on July 26, 1974.

August 2, 1974—IRS served GSA with a notice of levy stating that there was due, owing, and unpaid from Argus $132,422.78.

2. There is a claim in the total amount of $23,656.98 by the Department of Labor to the withheld funds in suit. However, defendant has stated in its briefs that the court does not have to determine priorities between IRS and the Department of Labor. Since defendant prevails on the IRS claim and the IRS claim exhausts the available funds, we deem it unnecessary to discuss the Department of Labor claim.

also: "Our conclusion is that the lien applies to property owned by the delinquent at any time during the life of the lien. This is in accord with all the cases that have directly passed upon this question." [Footnote omitted.] In *Seaboard Surety Co. v. United States,* 306 F.2d 855 (9th Cir. 1962), the taxpayer was awarded a Government contract on December 31, 1956. On March 2, 1957, a trust agreement was executed assigning the proceeds of the contract to a bank. Prior to the date of the agreement the Government had a fully perfected tax lien on all property and rights to property of the taxpayer. The court stated at 859:

> * * * These tax liens attached immediately to all rights of taxpayer under the government contract awarded December 31, 1956, including payments whenever earned. * * * [T]he trust agreement of March 2, 1957, could not

displace the tax liens, which had already attached to taxpayer's property rights in the contract. The fact that taxpayer's rights under the contract were dependent upon its performance did not affect the tax liens * * *.

In *United States Fidelity & Guaranty Co. v. United States,* 475 F.2d 1377, 201 Ct.Cl. 1 (1973), this court held that where the IRS was owed taxes by a defaulted prime contractor and the amount was paid to the IRS by the contracting agency out of retained contract funds, the tax lien has priority over a surety that has paid laborers and materialmen on its payment bond. *Accord, Seaboard Surety Co. v. United States,* 67 F.Supp. 969, 107 Ct.Cl. 34 (1946), *cert. denied,* 330 U.S. 826, 67 S.Ct. 863, 91 L.Ed. 1275 (1947).

■ Plaintiff also relies on § 6323.[3] Plaintiff argues that as to monies earned

---

**3.** Relevant portions of § 6323 are as follows:

"SEC. 6323. Validity and priority against certain persons.

"(a) Purchases, holders of security interests, mechanic's lienors, and judgment lien creditors.—The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

* * * * * *

"(c) Protection for certain commercial transactions financing agreements, etc.—

"(1) In general.—To the extent provided in this subsection, even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing but which—

"(A) is in qualified property covered by the terms of a written agreement entered into before tax lien filing and constituting—

"(i) a commercial transactions financing agreement,

"(ii) a real property construction or improvement financing agreement, or

"(iii) an obligatory disbursement agreement, and

"(B) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.

"(2) Commercial transactions financing agreement.—For purposes of this subsection—

"(A) Definition.—The term 'commercial transactions financing agreement' means an agreement (entered into by a person in the course of his trade or business)—

"(i) to make loans to the taxpayer to be secured by commercial financing security acquired by the taxpayer in the ordinary course of his trade or business, or

"(ii) to purchase commercial financing security (other than inventory) acquired by the taxpayer in the ordinary course of his trade or business;

"but such an agreement shall be treated as coming within the term only to the extent that such loan or purchase is made before the 46th day after the date of tax lien filing or (if earlier) before the lender or purchaser had actual notice or knowledge of such tax lien filing.

"(B) Limitation on qualified property.—The term 'qualified property', when used with respect to a commercial transactions financing agreement, includes only commercial financing security acquired by the taxpayer before the 46th day after the date of tax lien filing.

"(C) Commercial financing security defined.—The term 'commercial financing security' means (i) paper of a kind ordinarily arising in commercial transactions, (ii) accounts receivable, (iii) mortgages on real property, and (iv) inventory.

* * * * * *

"(d) 45-day period for making disbursements.—Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing by reason of disbursements made before the 46th day after the date of tax lien filing, or (if earlier) before the person making such disbursements had actual notice or knowledge of tax lien filing, but only if such security interest—

under these contracts by Argus on and after June 28, 1974, the Federal Tax Lien Act of 1966 grants plaintiff a priority over earlier filed notices of tax lien as a holder of a security interest within the meaning of § 6323. However, since plaintiff does not in fact qualify for the priority status it claims for itself under § 6323, plaintiff's reliance, based as it is on a fallacious premise, collapses for lack of support.

In *Donald v. Madison Industries, Inc.,* 483 F.2d 837, 842 (10th Cir. 1973), the Court of Appeals in an opinion by Senior Judge Laramore of this court held with relation to § 6323 as follows:

Summarizing the foregoing definitions and rules as applicable herein, it is apparent that the appellant's security interest will take priority over the filed Federal tax lien if the following requisites are met:

1. The *"security interest" stems from a written agreement which (a) was entered into before the Federal tax lien was filed,* and (b) qualifies as a "commercial transactions financing agreement" under section 6323(c)(2)(A)(i); [Emphasis supplied.]

2. The loans were made pursuant to the written agreement within 45 days of the tax lien filing or prior to receiving actual notice or knowledge that the tax lien had been filed, *i. e.,* disbursements or loans after receipt of actual notice or 45 days, whichever is sooner, are unprotected;

3. The written agreement covered "qualified property"—here inventory—which was "acquired" by the taxpayer within 45 days of the tax lien filing; and

4. State law gives the security interest holder priority over a judgment lien

by an unsecured creditor, as of the time the Federal tax lien is filed.

*Accord,* 9 Merten's Law of Federal Income Taxation § 54.66.7 (1971).[4]

With relation to the four requirements under § 6323, we observe that plaintiff does not overcome the requirement that its security interest arise from a written agreement entered into *before* these tax liens were filed. The first of the written agreements, *i. e.,* the assignments, was executed on June 5, 1974. However, by June 4, 1974, defendant had filed Notices of Tax Lien Under Internal Revenue Law relating to Argus which then totaled $86,573.02. In *Donald v. Madison Industries, Inc., supra* at 844, the court held as follows:

* * * Since these security agreements were entered into *after* the tax lien filing by some eight months or more (one day after would be just as fatal), appellant clearly can draw no support from these documents with respect to the December 1969 tax lien. Section 6323(c)(1). However, they would be relevant to any tax liens filed after their execution. (Emphasis in original).

Furthermore, plaintiff's position as to its having any priority under the Federal Tax Lien Act of 1966 fails because plaintiff has not demonstrated to this court that its "security interest" at any relevant time became "protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation" as required by § 6323(c)(1)(B). Therefore, we hold that plaintiff is not entitled to any priority under § 6323 over the tax liens filed before June 5, 1974.

Plaintiff also argues that defendant is estopped to claim a lien having priority over plaintiff's rights. It bases its argument on this court's decision in *Produce Factors Corp. v. United States,* 467 F.2d 1343, 199

* * * * * *

"(1) is in property (A) subject, at the time of tax lien filing, to the lien imposed by section 6321, and (B) covered by the terms of a written agreement entered into before tax lien filing, and

"(2) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation."

4. H.R.Rep.No.1884, 89th Cong., 2d Sess. 45 (1966), provides as follows in pertinent part:

"* * * Thus, the security interest must arise out of a written agreement entered into before the notice of tax lien was filed * *."

Ct.Cl. 572 (1972). Plaintiff's position is that when it submitted its notices of the subject assignments and the assignments themselves to GSA as required by the Assignment of Claims Act, the failure of defendant's officials to advise plaintiff of the tax claims of which GSA had notice was a breach of the duty defendant owed to plaintiff as an assignee. As a result, so the argument goes, plaintiff is entitled to recover the monies it lent to Argus. The language of the *Produce Factors Corp.* decision on which plaintiff relies is as follows:

> The assignee of Government contract rights is, of course, entitled to certain governmental protection of its interests. If at the time it receives notification of an assignment, the Government knows that the assignee's collateral is worthless, the Government must convey that information to the assignee so that he will not advance funds on the strength of proceeds that will never come due. * * *
> [467 F.2d at 1349, 199 Ct.Cl. at 582.]

The assignee in *Produce Factors Corp.* was denied any recovery because it failed to establish that the Government had actual or constructive notice of a fact which it was duty bound to convey to the assignee and also because the assignee's knowledge was held to be superior to the Government's.

■ In order to establish an estoppel against the United States, four separate elements must be present. One of these essential requirements is for the party asserting the estoppel to be "ignorant of the true facts." *Emeco Industries, Inc. v. United States,* 485 F.2d 652, 657, 202 Ct.Cl. 1006, 1015 (1973); *United States v. Georgia-Pacific Co.,* 421 F.2d 92, 96 (9th Cir. 1970). Plaintiff cannot set itself up as being ignorant of the IRS tax claims because it had constructive notice of the existence of said liens.

> * * * The purpose of the filing of a notice of Federal tax lien is to give constructive notice. A purchaser is charged with constructive notice of all a person of ordinary intelligence and diligence would have discovered by an examination of the index to Federal tax liens in the appropriate local office. * * * 9 Merten's Law of Federal Income Taxation § 54.66.-12 (1971). [Footnotes omitted.]

*Accord, Richter's Loan Co. v. United States,* 235 F.2d 753 (5th Cir. 1956); *United States v. Sirico,* 247 F.Supp. 421 (S.D.N.Y.1965); *Goldstein v. Bankers Commercial Corp.,* 152 F.Supp. 856 (S.D.N.Y.1957), *aff'd per curiam sub nom. Goldstein v. United States,* 257 F.2d 48 (2d Cir. 1958).

■ Once it is established that plaintiff was chargeable with constructive notice, that notice has the same legal significance as actual notice. In *Simmons Creek Coal Co. v. Doran,* 142 U.S. 417, 437, 12 S.Ct. 239, 246, 35 L.Ed. 1063 (1892), the Supreme Court stated:

> * * * He is bound not only by *actual,* but also by *constructive* notice, which is the same in its effect as actual notice. * * * [Emphasis in original.]

*Accord,* 66 C.J.S. Notice § 19b (1950):

> * * * constructive * * * and actual notice have the same effect, and either constructive notice or actual notice is binding independently of the other. *Accordingly, a person chargeable with constructive * * * notice is as much bound thereby as if the notice were actual.* * * * [Emphasis supplied.] [Footnotes omitted.]

■ Accordingly, defendant's duty to "convey" information to an assignee is fully and completely discharged as to tax claims by the filing of tax liens. That it would perhaps have been a better course for defendant's officials to give plaintiff actual notice of the IRS claims is not a legally sufficient basis for plaintiff to recover. As a matter of law, defendant did not breach the duty imposed by *Produce Factors Corp., supra.* Plaintiff may not recover, therefore, on its theory of equitable estoppel.

■ The court need respond only briefly to plaintiff's final contention that the doctrine of marshaling assets should be invoked here to require defendant to collect its claims of offset against assets of Argus being withheld under contracts which are not in issue before this court before defendant can resort to the funds being withheld

under the five contracts which are in issue in this case.[5] Defendant states that the total debts owed it by Argus far exceed the total monies defendant is withholding. Thus, to the extent defendant is unable to pay itself out of the $43,739.09 due and unpaid under the subject contracts ahead of plaintiff, defendant will not be reimbursed for the total of the obligations owed to it by Argus. There can be no marshaling when to do so would limit the double-fund creditor's ability to satisfy the total debt owed to it. This would be inequitable. *New Bern Oil & Fertilizer Co. v. National Bank,* 28 F.2d 554, 556 (4th Cir. 1928); *Caplinger v. Patty,* 398 F.2d 471, 476 (8th Cir. 1968); *Victor Gruen Associates, Inc. v. Glass,* 338 F.2d 826, 829 (9th Cir. 1964).

## CONCLUSION

For the above reasons, defendant's motion for summary judgment is granted, plaintiff's motion for summary judgment is denied, and the petition is dismissed.

BENNETT, Judge, with whom SKELTON, Judge, joins, concurring:

I concur with Judge Kashiwa's opinion and in the decision reached, but find it necessary to discuss briefly one aspect of plaintiff's rebuttal to the two affirmative defenses set up by defendant in this litigation. When faced with these defenses, plaintiff promptly asserted that its recovery could not be diminished to the extent of its assignor's delinquent taxes or underpaid employee wages, because of the terms of the Assignment of Claims Act of 1940, as amended, 41 U.S.C. § 15 (1970):

Any contract of * * * the General Services Administration * * * may, in time of war or national emergency proclaimed by the President * * * or by Act or joint resolution of the Congress and until such war or national emergency has been terminated in such manner, provide or be amended without consideration to provide that payments to be made to the assignee of any moneys due or to

become due under such contract shall not be subject to reduction or set-off, and if such provision or one to the same general effect has been at any time heretofore or is hereafter included or inserted in any such contract, payments to be made thereafter to an assignee of any moneys due * * * shall not be subject to reduction or set-off for any liability of any nature of the assignor to the United States or any department or agency thereof which arises independently of such contract, * * *.

It should be noted that the statute confers discretion upon contracting agencies to include the appropriate language. A "no set-off" clause is not mandatory.

The record in this case does not include copies of the five contracts themselves which were assigned as security to this plaintiff, nor has plaintiff otherwise proved to my satisfaction that the contracts originally included the no set-off language which is authorized by 41 U.S.C. § 15 (1970). In fact, plaintiff implicitly concedes that no such provision originally appeared in any of the five contracts by arguing in its main brief that the provisions of the Act became operative through an implied contract amendment when it as assignee delivered copies of the assignments themselves to GSA. The instruments of assignments, which we do have before us, contain a warranty running from the assignor to plaintiff that no outstanding claims existed which might result in a set-off, reducing payments otherwise due the contractor.

Thus, plaintiff finds itself reduced to the position that each of these contracts was amended during the course of performance, so as to include by operation of law a provision binding against the Government that payments to be made to the assignee of moneys due or to become due the contractor would not be subject to reduction or set-off for the assignor's liabilities to the United States or its agencies. Plaintiff finds such an amendment implied in fact from the following circumstances: (1) the instru-

---

5. Defendant contends that the doctrine of marshaling assets does not apply to the United

States but we need not rule on the question in view of the inadequacy of plaintiff's position.

ments of assignment to it contained the contractor's warranty that no indebtedness existed in favor of the United States; (2) the instruments were delivered to responsible officials at GSA; and (3) GSA acknowledged receipt of such instruments without exception.

I would go a step further than Judge Kashiwa's opinion and hold as well that, as a matter of law, none of these five contracts were amended to contain a no set-off provision. In order to amend a contract, as in the case of contracting in the first instance, the parties by words or actions must manifest assent to the terms of the proposed bargain. Restatement, Contracts § 52 (1932); Restatement, Second Contracts § 52 (T.D. No. 1 (1964)). I do not think that we reasonably can say that authorized Government officials manifested their assent to the inclusion of a no set-off provision in these contracts. The Government did nothing more than to acknowledge receipt of the papers embodying the various assignments. Such an acknowledgment alone on the facts of this case is insufficient to conclude a legally effective amendment of a contract.

I agree that the petition should be dismissed.