**UNITY BANK & TRUST COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 222–82C.

United States Claims Court.

June 18, 1984.

As Amended July 20, 1984.

Frances Talcove, Boston, Mass., for plaintiff.

Lynn J. Bush, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant; Gerald F. Krizan, Office of Solicitor, Dept. of Labor, Washington, D.C., of counsel.

## OPINION

TIDWELL, Judge.

Unity Bank and Trust Company brings this suit against the United States seeking $30,126 plus interest and costs on a government contract. Plaintiff is the assignee of all proceeds to a painting contract awarded to P & R Professional Painting, Inc. (assignor) by the Small Business Administration in conjunction with the Department of the Air Force pursuant to section 8(a) of the Small Business Act, 15 U.S.C. § 637(a). Both parties have moved for summary judgment. Jurisdiction is proper under 28 U.S.C. § 1491. We grant summary judgment for defendant and direct that plaintiff's petition be dismissed.

## FACTS

On March 16, 1978, the Small Business Administration (SBA) took award of Department of the Air Force Contract No. F19650–78–C–0046 to paint various buildings at Hanscom Air Force Base, Massachusetts. The same day, the SBA entered into contract, No. SB1308(a)–78–C–042,[1] with P & R Professional Painting, Inc. (P & R) to provide the painting services procured under Contract No. F19650–78–C–0046. P & R, in effect, became a subcontractor to the Air Force.[2]

---

1. This "subcontracting" procedure is authorized by 15 U.S.C. § 637(a), which establishes the SBA's section 8(a) program authority for federal contract set-asides for participating disadvantaged contractors.

2. Even though P & R was a subcontractor to the Air Force, for the purpose of clarity we will refer to it in this decision, unless otherwise noted, as the "contract".

Performance of the contract was subject to the prevailing wage requirements of the Davis-Bacon Act, 40 U.S.C. § 276a. The statutory and contractual provisions required, *inter alia,* P & R to pay its laborers and mechanics on the project not less than the prevailing wages and fringe benefits as determined by the Secretary of Labor and set forth in contract Wage Decision No. MA77–3069. The wage decision required an hourly prevailing wage rate (including fringe benefits) of $10.92 for the job classification of painter.

The terms of the contract set the contract price at $23,984 and required P & R to obtain a performance bond and a payment bond.[3] On March 26, 1978 P & R obtained both the performance and payment bonds from American Fidelity Fire Insurance Co. (the surety). The bonds were for the penal sum of $23,984.

On June 12, 1978 P & R, as previously arranged, began to borrow money from plaintiff in order to finance the project. To protect its rights and interests thereunder, plaintiff had demanded and received from defendant an assignment of P & R's rights to its earnings under the contract pursuant to the Assignment of Claims Act, 41 U.S.C. § 15.[4] Defendant acknowledged the assignment to plaintiff on July 13, 1978. On July 25, 1978 the contract was amended by increasing the contract price from $23,984 to $55,984 to provide for additional painting services. Thereafter, plaintiff made additional loans to P & R through September 23, 1978 increasing the loan balance to $55,110.

Work on the contract proceeded as scheduled and defendant made two disbursements totalling $23,984 to plaintiff. The first was made on July 14, 1978 for $10,123.65 and the second was made on August 18, 1978 for $13,860.35. The contract as modified was satisfactorily completed and accepted by the contracting officer on May 24, 1979. However, further disbursement of the remaining balance due plaintiff was withheld by the contracting officer in response to a complaint filed with defendant on October 26, 1978 by several of P & R's employees alleging that they had been paid significantly less than required by Department of Labor wage determination MA77–3069. The Secretary of Labor, in response, commenced an investigation on December 13, 1978 into the employee's allegations. The results of the investigation disclosed that P & R had paid its employees hourly rates ranging from $5.00 to $7.00 while, in fact, the employees should have been paid $10.92 per hour. Based on the lower hourly wage rates actually paid, the investigation disclosed that P & R had underpaid 14 employees a total of $24,434.78. The Department of Labor notified the Air Force of its findings and requested that it withhold final payment on the contract until resolution of the wage dispute.

On October 3, 1979 P & R was notified of the findings of the Department of Labor investigation and was offered an opportunity to administratively contest the findings. P & R opted to challenge the findings and on October 19, 1979 requested a hearing before a Department of Labor Administrative Law Judge. Prior to the administrative hearing, however, P & R entered into a settlement agreement with the Department of Labor in which P & R agreed to the transfer of $24,434.78 of the funds withheld by the Air Force to the General Accounting Office (GAO) for distribution to the 14 aggrieved employees. On Septem-

---

**3.** The Miller Act, 40 U.S.C. § 270a, at the time in question required prospective government contractors of contracts exceeding $2,000 for the construction, alteration or repair of public buildings or works to furnish a performance bond for the protection of the United States and a payment bond guaranteeing payment to persons supplying labor and material under the contract.

**4.** The Assignment of Claims Act, in effect in 1978, was enacted in 1940 and amended in 1951 to encourage legitimate financial institutions to lend money to contractors on government contracts by providing protection for the lending institution. The Act, as interpreted by case law, requires that the government acknowledge an assignment on a government contract and notify the assignee if the collateral (*i.e.,* the proceeds on the contract in this case) is valid at the time of the assignment.

ber 4, 1980 the Administrative Law Judge approved the agreement and, in addition, issued an order directing that the balance of the withheld funds be released to P & R.

On September 8, 1980, the surety filed a motion with the Department of Labor to stay the September 4, 1980 order. As grounds for the motion the surety alleged that it was entitled to recover a portion of the withheld contract funds by reason of an indemnity agreement, since, due to P & R's failure to pay certain materialmen and subcontractors, the surety had paid materialmen claimants $10,197.66. Thereafter, the Department of Labor Administrative Law Judge, amended his decision and order by striking the requirement that the Air Force release any excess contract funds to P & R.

On May 3, 1982, plaintiff filed suit in this court to recover the entire balance of the funds withheld by the Air Force on the amended P & R contract. On January 11, 1983, the surety filed a third-party complaint in this case seeking reimbursement of the $10,197.66 it had paid as surety. However, on October 23, 1983, the surety stipulated to the dismissal of its complaint with prejudice.[5] The defendant moved for summary judgment on August 31, 1983 and plaintiff subsequently cross-moved for summary judgment. Oral argument on the cross-motions was heard on March 12, 1983.

### DISCUSSION

Summary judgment is appropriate only where there are no issues of material fact in dispute and judgment is appropriate as a matter of law. *See, e.g., South Louisiana Grain Services, Inc. v. United States*, 1 Cl.Ct. 281, 289 (1982). Upon careful examination of the pleadings, submitted papers and oral arguments, we conclude, after construing the respective motions in a light most favorable to the opposing party, that there are no genuine issues of material fact and that this action is ripe for summary judgment.

This dispute requires us to interpret several statutes and determine whether plaintiff is entitled to the remaining contract proceeds withheld by the Air Force. This could ostensibly deny the 14 employees the balance of their wages. The Davis-Bacon Act, 40 U.S.C. § 276a, was enacted to protect employees from substandard earnings by fixing a wage floor on government contracts and to provide a scheme for correcting any injustices done to them. *Universities Research Assn. v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981); 1960 U.S.Code Cong. & Ad.News 2693. The Assignment of Claims Act, 41 U.S.C. § 15, was passed to protect legitimate financing institutions which make loans to government contractors. *Central Bank v. United States*, 345 U.S. 639, 643, 646, 73 S.Ct. 917, 919, 920, 97 L.Ed. 1312 (1953); 1951 U.S.Code Cong. & Ad.News 1414. Since the funds are insufficient to cover both plaintiff's and the 14 employees' claims, the court must determine which claim has priority. Based on a careful study of the language and purpose of the statutes and applicable case law, we hold that the Davis-Bacon Act gives the 14 employees' claim priority over plaintiff's claim to the remaining proceeds.

At the time of the award of this contract, the Davis-Bacon Act, as amended, applied to "every contract in excess of $2,000 to which the United States ... is a party for ... painting and decorating, of public buildings or public works of the United States ... and requires or involves the employment of mechanics and/or laborers ..." Along with establishing minimum wage requirements, the Act requires that the contract provide: (1) for payment to the mechanics and laborers not less often than weekly; (2) for the payment of scale wages to be posted at the job site; and (3) that accrued payments to the contractor may be withheld if the contractor fails to pay the scale wage to the mechanics and laborers.

---

5. At oral argument, the defendant indicated that the Small Business Administration (SBA) had subsequently reimbursed the surety for the bond payment and thereafter the surety stipulated to the dismissal of its third-party complaint.

■ The government acted properly in withholding payment of funds to plaintiff. The government's action is supported by an administrative finding that P & R underpaid its employees in violation of the Davis-Bacon Act, the express terms of the contract, and Wage Decision No. MA77–3069. *See* 29 C.F.R. parts 1, 5 and 6. It is well established in this court that the general rule that an assignee acquires no greater rights than his assignor applies to government contracts. *Produce Factors Corp. v. United States*, 199 Ct.Cl. 572, 467 F.2d 1343 (1972); *Hardin County Savings Bank v. United States*, 106 Ct.Cl. 577, 599, 65 F.Supp. 1017, 1022 (1946). Since P & R was not entitled to the withheld payments until all of its contractual obligations were completed, including full payment of its employees, neither could P & R's assignee (plaintiff) be entitled to the funds until the underpaid employees were properly compensated. *See National City Bank of Evansville v. United States*, 143 Ct.Cl. 154, 163 F.Supp. 846 (1958); *see also In The Matter of Cascade Reforestation, Inc.*, 56 Comp.Gen. 499, 7701 CPD 250 (1977).

Plaintiff argues that the Assignment of Claims Act, 41 U.S.C. § 15, which creates an exception to the general rule of assignment where the assignee is a bank, trust company or other financing institution meeting the requirements of the Act, allows plaintiff to prevail in this action. Plaintiff directs the court to the specific language of the Act which states in part:

> Notwithstanding any law to the contrary governing the validity of assignments, any assignment pursuant to this section, shall constitute a valid assignment for all purposes.

> In any case in which moneys due or to become due under any contract are or have been assigned pursuant to this section, no liability of any nature of the assignor to the United States or any department or agency thereof, whether arising from or independently of such contract, shall create or impose any liability on the part of the assignee to make restitution, refund, or repayment to the United States of any amount heretofore since July 1, 1950, or hereafter received under the assignment.

> \* \* \* \* \* \*

> [Payments to be made to an assignee] shall not be subject to reduction or set-off for any liability of any nature of the assignor to the United States ... [for] (2) fines, (3) penalties (which term does not include amounts which may be collected or withheld from the assignor in accordance with or for failure to comply with the terms of the contract) ...

41 U.S.C. § 15

■ Plaintiff would have us read the above language in a fashion that would put plaintiff in a superior position to that of its assignor for moneys yet to be dispersed under the contract and which are withheld from the assignor for failure to comply with the terms of the contract. However, this court will not expand the protection given to assignees by the clear language of the statute. The statute states that no assignor liability is to be imposed upon the assignee to restore, refund or repay any amount received under the assignment. 41 U.S.C. § 15. Based on this reading, only moneys actually received by the assignee are protected by the Assignment of Claims Act against any liability incurred by the contractor including violation of the Davis-Bacon Act; 40 U.S.C. § 276a. The present case falls outside the scope of protection provided by the Assignment of Claims Act since the moneys have not yet been dispersed to plaintiff. Thus, we hold that that the Act does not afford plaintiff priority over the 14 employees to the moneys withheld under the P & R contract for assignor's failure to comply with the terms of the contract where those moneys have yet to be disbursed.

■ Plaintiff next argues that by virtue of the Miller Act, 40 U.S.C. § 270a, the liability for employee underpayment should fall upon the surety and not the plaintiff assignee. However, the Davis-Bacon Act remedy of withholding payment for underpaid employees is not dependent upon whether or not a contractor is bonded as

required by the Miller Act. *See* 40 U.S.C. § 276a–2. The protection offered by the Davis-Bacon Act and the Miller Act are not mutually exclusive. While the 14 underpaid employees could have sought recovery from the surety, this was not their exclusive remedy. They were also protected by the withholding payment provisions of the Davis-Bacon Act. In addition, if such withheld amounts are insufficient to cover the wage underpayments, the employees have a statutory cause of action against the contractor and its sureties to recover the balance owed. 40 U.S.C. § 276a–2(b). *See also, Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 142, 83 S.Ct. 232, 237, 9 L.Ed.2d 190 (1962). Thus, the employees' failure to seek recovery from the surety before the expiration of the Miller Act Bonds [6] does not preclude them from availing themselves of the additional remedies afforded them under the Davis-Bacon Act. Nor does their inaction on the Miller Act Bonds alter the priority of their claims in relation to plaintiff's to the withheld moneys.

■ Finally, plaintiff argues that the government should be estopped from withholding moneys under the remedy authorized by the Davis-Bacon Act because defendant failed in performing its obligations under the Act by not interviewing the employees on the job site or checking the contractor's bookkeeping entries of wage payments from March to December of 1978. Plaintiff looks for support of its argument in *Produce Factors Corp. v. United States,* 199 Ct.Cl. 572, 467 F.2d 1343 (1972) wherein our predecessor court recognized that an assignee of the proceeds under a government contract is "entitled to certain governmental protection of its interests" 199 Ct.Cl. at 582, 467 F.2d at 1349. In *Produce Factors* the court restated the rule established in *Mercantile National Bank v. United States,* 150 Ct.Cl. 700, 707 (1960) [7] that if the government knows or has facilities for knowing that the collateral on which an assignee is lending money is worthless, then the government may not take advantage of its own lack of diligence to the assignee's detriment. Thus, the government has a duty to notify an assignee at the time of assignment, if, in its opinion, the collateral is worthless.

The assignee in *Produce Factors* was denied recovery on summary judgment because it failed to show that the government had actual or constructive notice of a fact which the government was obligated to communicate to the assignee, *i.e.,* that the collateral was worthless. *See Atlantic National Bank v. United States,* 210 Ct.Cl. 340, 536 F.2d 1354 (1976). Plaintiff seeks to distinguish the case at bar from *Produce Factors* by alleging that the government had constructive notice that P & R had underpaid its employees. Plaintiff bases its constructive notice argument on the theory that had the government inspected the job site or talked with the 14 employees as allegedly required by the Davis-Bacon Act, the government would have been on notice that P & R was violating the statutory and contractual wage provisions.[8] Plaintiff contends that, had the government conveyed this information to plaintiff,

---

**6.** The Miller Act states that no suit on the bonds shall be commenced later than one year after the last day labor was performed. 40 U.S.C. § 270a(d).

**7.** In *Mercantile National Bank v. United States,* 210 Ct.Cl. 340, 536 F.2d 1354 (1976), a Mexican corporation contracted with the United States to supply manganese ore. The contract provided that the rate to be paid for the ore would be adjusted for any variance in the dollar/peso exchange rate. After the contract was partially completed, the Mexican corporation assigned its rights to the remaining proceeds of the contract to Mercantile National Bank. After the assignment but before payment, the United States

realized that it had overpaid the Mexican corporation by not adjusting the contract rate to reflect a devaluation in the Mexican peso. The United States sought to offset the overpayments by withholding payment to Mercantile National Bank on the unpaid balance of the contract. In allowing Mercantile National Bank's claim, the court looked to the Assignment of Claims Act and ruled that the purpose of the Assignment of Claims Act could not "be frustrated by the government's paying itself by offset, instead of suing to get its money back."

**8.** *See* 40 U.S.C. § 276a.

plaintiff would not have made additional loans to P & R.

We hold that the enforcement provisions of the Davis-Bacon Act did not create a duty from which constructive notice of any violation can be extracted. The enforcement provisions are discretionary rather than mandatory. Furthermore, they were never intended to benefit an assignee. They were intended as an enforcement tool by providing the government with authority to inspect the job site for evidence of violations of the Act. The government did not receive actual notice of the wage violations until October 26, 1978, over a month after the last loan installment was made by plaintiff to P & R.

In summary, the government was not "on notice" until October 26, 1978 that the collateral at the time of the assignment was not good and since no disbursements were made after October 26, 1978, plaintiff is not entitled to the protection of the Assignment of Claims Act and must take a position junior to that of the 14 employees as to the withheld funds.

### CONCLUSION

We, therefore, grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment. Plaintiff's complaint is to be dismissed. As requested by the Defendant the Air Force is ordered to transfer $24,434.98 to the General Accounting Office for payment to the 14 underpaid employees and the remaining balance left on the retainage after disbursement has been released to the plaintiff. These actions need not be taken by the Air Force until the judgment dismissing the complaint becomes final.

IT IS SO ORDERED.