**BIGHEART PIPELINE CORPORA-
TION, an Oklahoma corporation,
Plaintiff,**

v.

**The UNITED STATES of America (Internal Revenue Service); Homestead Oil Company, Inc., His Industries, Inc.; Duncan Petroleum, Core Energy, Inc.; Delores Brightwell; Herman Wilson; and Charles Duggar, Defendants.**

No. 83–C–891–B.

United States District Court,
N.D. Oklahoma.

Oct. 18, 1984.

ORDER

BRETT, District Judge.

This matter comes before the Court on cross motions for summary judgment filed by defendant United States of America and defendant Core Energy, Inc. A hearing on the motions has been held. For the reasons set forth below, the motion for summary judgment of Core Energy, Inc., is overruled and the motion for summary judgment of the United States of America is sustained.

This is an interpleader action filed by Bigheart Pipe Line Corporation, the purchaser of oil runs from the "Hammer K" lease in Mayes County, Oklahoma, to determine entitlement to proceeds from the oil purchases. Defendants all claim some right to proceeds from the sale of oil to Bigheart.

The lawsuit has its origin in the failure of Homestead Oil Co. to pay certain federal employment taxes owed for its taxable quarters in 1981, 1982, and 1983. These unpaid taxes were assessed against Homestead by the Internal Revenue Service on the following dates and in the following amounts:

| Date of Assessment | Tax Period | Type of Tax | Principal Amount |
|---|---|---|---|
| 11/1/82 | 4th Qtr/1981 | FICA/Withholding | $62,368.69 |
| 11/1/82 | 1st Qtr/1982 | FICA/Withholding | 39,119.34 |
| 11/1/82 | 2nd Qtr/1982 | FICA/Withholding | 43,845.81 |
| 11/22/82 | 3rd Qtr/1982 | FICA/Withholding | 20,648.49 |
| 2/21/83 | 4th Qtr/1982 | FICA/Withholding | 31,416.74 |
| 2/21/83 | 4th Qtr/1982 | FUTA | 6,169.13 |
| 7/4/83 | 1st Qtr/1983 | FICA/Withholding | 10,138.71 |

Homestead is currently indebted to the United States for the total sum of $247,532.37, plus statutory additions as allowed by law.

On November 17, 1982, Homestead assigned to Core Energy a 78.125 percent interest in an undeveloped oil and gas lease in Mayes County, named the "Hammer K" lease. On November 29, 1982 and December 27, 1982, the United States filed of record Notices of Federal Tax Lien against all property or rights to property of Homestead with the County Clerk, Mayes County, Oklahoma, in connection with the federal tax liabilities of Homestead. On January 20, 1983—after the filing of the Notice

R. Louis Reynolds, Lynwood A. Wells, Prichard, Norman & Wohlgemuth, Tulsa, Okl., for plaintiff.

Larry B. Bach, Forney, Tex., for Homestead Oil Co., Inc.

Robert T. Mowrey, Benny D. Campbell, Lisa B. Graivier, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., Stephen H. Brammell, Tony M. Davis, Conner & Winters, Tulsa, Okl., for Core Energy.

Layn Phillips, U.S. Atty., Tulsa, Okl., Cary L. Jennings, Atty., Tax Div., Dept. of Justice, Dallas, Tex., for U.S.A.

Jeffrey N. Sheehan, Forney, Tex., for Duncan Petroleum, Core Energy, Brightwell, Wilson and Duggar.

**52**

of Federal Tax Lien—the assignment from Homestead to Core Energy was filed of record with the County Clerk, Mayes County, Oklahoma.

Core Energy commenced drilling on the property on May 1, 1983. Production of oil from the lease began in June 1983. All crude oil produced on the lease was sold to Bigheart Pipe Line Corporation from June through November 1983.

On August 31, 1983, the Internal Revenue Service served a Notice of Levy upon Bigheart with respect to funds in its possession covering the purchase price of the crude oil sold to it by Core Energy. On October 21, 1983, Bigheart filed this interpleader action, depositing $27,271.59 with the Clerk of the Court, and requesting a Court determination of proper distribution of the funds. Defendants Core Energy and the United States of America have filed cross motions for summary judgment on the issue of whether the general federal tax lien filed by the Internal Revenue Service attached to the funds paid into the Court.

*Effect Of Federal Tax Lien*

■ The Internal Revenue Code, 26 U.S.C. § 6321, provides:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and *rights to property*, whether real or personal, belonging to such person." (Emphasis added)

The lien arises at the time the tax is assessed, and continues until the liability is satisfied or becomes unenforceable. 26 U.S.C. § 6322.

Under 26 U.S.C. § 6323, the United States, through filing of its tax lien, may obtain priority over other claimants to the same property except for certain protected parties such as purchasers. To qualify as a protected "purchaser" under § 6323, a third party who acquires an interest in

property of the taxpayer must be protected against subsequent purchasers without actual notice under local law. § 6323(h)(6). The parties agree that Core Energy, having failed to file its assignment of record until after the United States filed its Notice of Federal Tax Lien, did not qualify as a "purchaser" under § 6323 until after January 20, 1983, the date it filed the assignment of record. Thus, the only question for resolution is whether the tax liens can attach to monies in the Registry of the Court as "property or rights to property" of Homestead under § 6321.

■ The Government may not take one person's property to satisfy another person's tax obligations, and unless it is established that the taxpayer, at the time the tax lien was filed, was the owner of or had some interest in the property on which the levy is sought to be made, the government cannot enforce the lien against such property. *United States v. Kaufman*, 267 U.S. 408, 45 S.Ct. 322, 69 L.Ed. 685 (1925); *In re Carlson*, 580 F.2d 1365, 1369 (10th Cir.1978). The question then becomes whether and to what extent a taxpayer had "property" or "rights to property" to which the lien could attach under § 6321. *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). In answering this question, courts must look to state law. *In re Carlson, supra,* 580 F.2d at 1368–69. The tax lien statute creates no property rights, but it does attach consequences, which are federally defined, to rights created under state law. *United States v. Durham Lumber Co.*, 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960).

■ The parties have agreed that under Oklahoma law, an oil and gas lessee has an incorporeal interest known as a *profit a prendre*. A lease does not vest in the lessee the title to the oil and gas in the land, but is simply a grant of a right to prospect for oil and gas, no title vesting until the oil or gas is reduced to possession by extracting the same from the earth. *Kolochny v. Galbreath*, 26 Okl. 772, 110 P. 902 (1910); *Frank Oil Co. v. Belleview Gas*

*& Oil Co.*, 29 Okl. 719, 119 P. 260 (1911). Therefore, the parties agree, the right to prospect for oil and gas, as defined by Oklahoma law, is a "contingent interest." The dispute between the parties centers on whether the federal tax lien could attach to a contingent interest.

■ The Court believes under § 6321 and applicable case law, a federal tax lien clearly may attach to a contingent interest. The statute itself provides a lien in favor of the United States can attach upon all property or "rights to property." In *Randall v. H. Nakashima & Co.*, 542 F.2d 270 (5th Cir.1976), the court held a taxpayer's contract right was a property interest to which a federal lien could attach. In so ruling, the court stated:

"Because the taxpayer's contract right was a valuable and transferable interest, it would be scholastic indeed to deny that it was a property interest to which the federal tax lien might attach. The statutory purpose of assuring collection strongly suggests that such interests should be subject to the lien to discourage transfers by the taxpayer aimed at defeating the rights of the government."

*Id.* at 274. As further support of its decision, the court stated:

"In holding that the taxpayer's contract right was property or a property right for purposes of 26 U.S.C. § 6321, we recognize that property is an expanding concept. Modern commercial transactions have spawned species of rights that the common law of years anon could not have envisaged. The era of seisen and tail has long vanished. Puts and calls, hedges and options are, analytically, property insofar as their possessor may realize something from their transfer. 'Property' is not to be confined in a juridical straitjacket.

\* \* \* \* \* \*

"The drafters of the § 6321 were wise in using the words 'property ... or rights to property' instead of enumerating attributes or varieties of property rights. By this device, they allowed the words that expansiveness, flexibility, and poten-tial for growth with which our commercial world endows them in the marts of trade. A contingency that conditions acquisition of legal title does not render empty or valueless a contract right in the property sought to be acquired. The concept of property is not bound to the present. Congress, in enacting § 6321, knew that the forms and varieties of property would remain in flux, and that a definition capable of precisely capturing those valuable interests for the tax gatherers' harvest would elude it.

"Congress did not attempt to define the commercial cosmos. Rather, it was perfectly willing to let contemporary transactions be analyzed to determine whether or nor (sic) the delinquent taxpayer had any part of a bundle of rights of commercial value, to which the tax lien would then attach."

*Id.* at 277–278. Other courts have also held a federal tax lien can attach to contingent interests. *See United States v. Trigg*, 465 F.2d 1264, 1268 (8th Cir.1972); *Seaboard Surety Company v. United States*, 306 F.2d 855, 859 (9th Cir.1962); *Atlantic National Bank v. United States*, 536 F.2d 1354, 1356, 210 Ct.Cl. 340 (1976); *Nevada Rock and Sand Company v. United States*, 376 F.Supp. 161 (Nev.1974); *George W. Ultch Lumber Co. v. Hall Plastering, Inc.*, 477 F.Supp. 1060 (W.D.Mo.1979).

■ The fact situation here is analogous to that of *Randall, supra*. The taxpayer had under the terms of the lease the right to drill for and produce oil and gas. Although the right might not be "property" in a strict sense, it was a valuable, transferable interest and thus was an "interest in property" under the terms of § 6321. Therefore, the federal tax liens filed by the Internal Revenue Service attached to the right transferred from Homestead to Core, and the government has priority over Core with respect to the funds interplead in this Court. Core could have established its priority by timely filing its assignment in keeping with 16 O.S. § 15 but did not do so.

Rule 56 of the Federal Rules of Civil Procedure provides summary judgment is proper where no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. *Bruce v. Martin-Marietta,* 544 F.2d 442, 445 (10th Cir.1976). The Court hereby concludes the United States of America is entitled to summary judgment on its claim that the general federal tax liens filed by the Internal Revenue Service attached to the proceeds from production paid into this Court. Therefore, the motion for summary judgment of the United States is sustained; the motion for summary judgment of Core Energy is overruled.

Entry of judgment in this matter will be delayed pending resolution of the claims of remaining parties. This matter is set for status conference October 25, 1984, at 8:30 a.m.