**In re NEVADA ENVIRONMENTAL LANDFILL, Debtor.**

**Bankruptcy No. BK-S-84-0007.**

United States Bankruptcy Court, D. Nevada.

Dec. 4, 1987.

Bonnie Boyce–Esplin, Las Vegas, Nev., for trustee.

Rollin Thorley, Las Vegas, Nev., for I.R. S.

MEMORANDUM DECISION REGARDING TRUSTEE'S MOTION FOR VALUATION OF SECURED CLAIM OF IRS

ROBERT CLIVE JONES, Chief Judge.

On January 3, 1984 the Debtor, Nevada Environmental Landfill, ("Debtor") filed a

petition for relief under Chapter 11 of the Bankruptcy Code. Prior to the filing of the petition the Internal Revenue Service ("IRS") had filed a notice of tax lien against the Debtor. At the time the petition was filed the Debtor owed the IRS $101,264.35.

The Debtor was engaged in the business of trash pick up and landfill and had a contract with Boulder City, Nevada for refuse disposal. A trustee was appointed in March, 1986 and the trustee operated the Debtor's business for approximately three months. The trustee subsequently determined that the estate was not financially capable of continuing its obligations under the Boulder City contract and negotiated an agreement for the sale of the contract rights and certain equipment and inventory of the Debtor. On May 30, 1986 this Court entered an order approving the assignment of the contract rights and the sale of the inventory and equipment. The total sale price for the Boulder City contract rights, inventory and equipment was $204,000, payable over four years, without interest. The contract provided for payment to the trustee directly from the contract obligor, Boulder City.

The order approving the sale contained a provision that the IRS lien in the amount of $101,264.35 would attach to the proceeds of the sale. The order further preserved the trustee's right to later contest the validity of the lien.

On May 20, 1987 the trustee filed a motion for valuation of the secured claim of the IRS. The trustee argues that the lien should be valued at $40,000, the amount that the equipment and inventory was worth to the estate. The IRS argues that its lien attached to the proceeds of the sale of the contract rights as well as the inventory and equipment. The IRS further argues that because it is an oversecured creditor, it is entitled to interest on its claim pursuant to 11 U.S.C. section 506(b).

## THE TAX LIEN

■ Upon refusal to pay a tax after demand, a lien arises in favor of the United States upon "all property and rights to property, whether real or personal," belonging to the delinquent taxpayer. 26 U.S.C. section 6321. A federal tax lien, arising upon assessment, continues in effect until the tax liability is extinguished and attaches to all after-acquired property of the taxpayer. *Glass City Bank of Janette, Pa. v. United States*, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945).

■ A federal tax lien may attach to the rights of a taxpayer under a contract. *See, e.g., Seaboard Surety Co. v. United States*, 306 F.2d 855, 859 (9th Cir.1962) (IRS lien attached to taxpayer's rights under government construction contract); *Atlantic National Bank v. United States*, 210 Ct.Cl. 340, 536 F.2d 1354, 1356 (1976) (IRS lien attached to taxpayer's right under contract for the performance of uniform guard services); *Valley Bank of Nevada v. City of Henderson*, 528 F.Supp. 907 (D.Nev.1981) (IRS lien could attach to taxpayer's property rights under water refunding agreement with city); *Hicks v. Commissioner*, 73–2 T.C.Para. 5926 (9th Cir.1973) (royalty contract and royalties due thereunder held subject to federal tax lien.) The fact that a taxpayer's right to the proceeds of the contract may be dependent upon performance of the contract does not mean that the proceeds are not property or rights to property of the taxpayer under 26 U.S.C. section 6321. *Seaboard Surety*, 306 F.2d at 359. *See also Atlantic National Bank*, 536 F.2d at 1356 (citing *City of Vermillion v. Stan Houston Equipment Co.*, 341 F.Supp. 707, 713 (D.S.D.1972)). Accordingly, in this case, the IRS lien could properly attach to the Debtor's interest in its contract with Boulder City.

■ Moreover, a lien created in favor of the United States by virtue of 26 U.S.C. section 6321 attaches to the proceeds of the sale of that property. *Phelps v. United States*, 421 U.S. 330, 334, 95 S.Ct. 1728, 1731, 44 L.Ed.2d 201 (1975); *United States v. Heffron*, 158 F.2d 657, 659 (9th Cir. 1947) (federal tax lien attaches to proceeds from sale of homestead); *In re Pennsylvania Central Brewing Co.*, 135 F.2d 60,

63 (3d Cir.1943). In *Phelps* the Supreme Court stated:

> [A federal tax lien] attache[s] to the proceeds of the sale. *See Sheppard v. Taylor*, 5 Pet. 675, 710, 8 L.Ed. 269 (1831); *Loeber v. Leininger*, 175 Ill. 484, 51 NE 703 (1898). "The lien reattaches to the thing and to whatever is substituted for it...." The owner and the lien holder, whose claims have been wrongfully displaced, may follow the proceeds wherever they can distinctly trace them.

421 U.S. at 334–335, 95 S.Ct. at 1731 (footnote omitted). Here, the proceeds of the sale of the Debtor's contract rights, equipment and inventory can be traced to the monthly payments received by the trustee. Therefore, the IRS has a lien upon the proceeds of the sale.

### INTEREST

 The IRS next argues that since it is an oversecured creditor, it is entitled to interest on its claim pursuant to 11 U.S.C. section 506(b). That section provides in relevant part:

> To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

It is clear that section 506(b) authorizes the allowance of postpetition interest to an oversecured creditor when the creditor's lien arises from an agreement. However, it is not clear whether an oversecured creditor whose lien arises by operation of statute, as in the present case, is similarly entitled to postpetition interest.

The question of whether interest is allowable absent an agreement turns on whether the qualification contained in section 506(b), allowing what is "provided for under the agreement," applies only to "reasonable fees, costs and charges" or whether it applies to interest as well. There appears to be a split of authority on this issue. In *Best Repair Co. v. United States*, 789 F.2d 1080 (4th Cir.1986) the Court of Appeals for the Fourth Circuit held that the phrase "provided for under the agreement" applies only to fees, costs and charges. The court stated:

> "There shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided for under the agreement under which such claim arose." The phrase "interest on such claim" is set off by commas, and the following phrase is introduced by "and any." The effect of this useage is to make "interest on such claim" a separate and distinct clause to which "provided for under the agreement" does not apply.... Though Congress could have more clearly separated the interest clause, we think that the natural meaning of its chosen words is to permit post-petition interest on non-consensual oversecured claims.

789 F.2d at 1082 (footnotes omitted). *Accord In re Busone*, 71 B.R. 201 (Bankr.E.D.N.Y.1987); *In re Henzler Mfg. Co.*, 55 B.R. 194 (Bankr.N.D.Ohio 1985); *In re Morrissey*, 37 B.R. 571 (Bankr.E.D.Va. 1984); *In re Loveridge Machine & Tool Co., Inc.*, 36 B.R. 159 (Bankr.D.Utah 1983).

However, in a recent case the Court of Appeals for the Sixth Circuit expressly disagreed with the Fourth Circuit's conclusion that nonconsensual lienholders are entitled to interest under section 506(b). In *In re Ron Pair Enterprises*, 828 F.2d 367, 373 (6th Cir.1987) the Sixth Circuit held that the language of section 506(b) does not clearly provide for the payment of such interest and, therefore, it fails to explicitly overrule the pre-Code rule disallowing the payment of postpetition interest on nonconsensual oversecured claims. In so holding, the court noted that while the language of a statute is always the starting point, the normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it needs to make that intent specific. 828 F.2d at 370 (citing *Kelly v. Robinson*, — U.S. —, 107 S.Ct. 353, 385–61, 93 L.Ed.2d 216 (1986)).

As noted by the *Ron Pair* court, it was well established under pre-Code bankrupt-

cy law that interest on both secured and unsecured prepetition claims stopped accruing upon the filing of a bankruptcy petition. *See, e.g., Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 163, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946). One exception to this general rule allowed postpetition interest on prepetition secured claims where the value of the collateral securing the debt exceeded the amount of the debt. *See, e.g., In re Boston & Maine Co.,* 719 F.2d 493, 496 (1st Cir.1983). However, it was generally agreed that this exception did not apply to liens which were nonconsensual in nature, such as tax liens. *See, e.g., Boston & Maine Co.,* 719 F.2d at 497; *In re Kerber Packing Co.,* 276 F.2d 245, 246 (7th Cir.1960); *United States v. Mighell,* 273 F.2d 682, 684 (10th Cir.1959); *United States v. Bass,* 271 F.2d 129, 131–132 (9th Cir.1959); *United States v. Harrington,* 269 F.2d 719, 724 (4th Cir.1959). In *Bass* the Ninth Circuit claimed that the principal reason for this distinction was that

> when the creditor extended credit, he relied upon the particular security given as collateral to secure both the principal of the debt and interest until payment and, if the collateral is sufficient to pay him, the contract between the parties ought not be abrogated by bankruptcy. This rationale has no application to tax liens.

*Bass,* 271 F.2d at 131 (quoting *Harrington,* 269 F.2d at 724.) In *Boston & Maine Co.* another reason for the distinction was given:

> [T]he payment of interest, which is secured by the lien, is contemplated by the parties at the beginning of each tax year. Rather, the imposition of interest on unpaid taxes is more in the nature of an enforcement device assuring the collection of delinquent taxes. In the context of an insolvency proceeding, to grant the entity postpetition interest on its tax lien would impose the "enforcement device" not on the insolvent debtor, but on those lower priority creditors whose claims will go unpaid. Such creditors are but innocent bystanders; they could have done nothing to effect the prompt payment of taxes and avoid the imposition of postpet-

ition interest. To penalize these creditors for the bankrupt's inability to pay its taxes on time violates all notions of equity.

*Id.,* 719 F.2d at 497.

In line with this reasoning, current bankruptcy law further supports the distinction between consensual and nonconsensual liens. Pursuant to 11 U.S.C. section 726(a)(5), where there is a surplus of assets which would otherwise remain at the close of a case for distribution back to the debtor, a creditor is entitled to postpetition interest on prepetition claims. Bankruptcy Code sections 1129(a)(7) and 1325(a)(4) ensure this result in Chapter 11 and 13 cases. Thus, when an estate is solvent, all creditors, including nonconsensual lienholders, are entitled to interest on their claims. Accordingly, the only time that a nonconsensual lienholder will not receive interest on its claim is when there are insufficient assets to satisfy all claimants. This seems to be a fair and equitable result. Innocent, lower-priority creditors will not end up with only minimal or no return on their claims while, in essence, funding payment of an "enforcement device" imposed upon the debtor. This concern is especially apparent when the interest-seeking creditor has not bargained for such interest.

In conclusion, this Court agrees with the Sixth Circuit that the language of section 506(b) is not sufficiently clear to alter pre-Code law absent an indication that Congress intended the section have that effect. As noted by the Sixth Circuit, "the placement of a comma and the inclusion of the words 'and any' do not evince an intention to reject the well established judicially created concept." *Ron Pair,* 828 F.2d at 373. If such a departure from prior law was intended, the language and the legislative history of section 506(b) should clearly indicate that intention. Moreover, this Court believes that the distinction between consensual and nonconsensual liens is valid for the reasons stated above. Therefore, until Congress makes clear its intention to modify pre-Code law, this Court will continue to disallow interest on oversecured nonconsensual liens unless the estate is solvent.

Accordingly, because the IRS' lien arises by virtue of statute, the IRS is not entitled to interest on its claim.

An appropriate Order will be issued.