**In re Mercidene H. BLACKERBY, Debtor.**

**Bankruptcy No. 96–13450 DAS.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 24, 1997.

Theodore Hoppe, Media, for debtor.

Kathleen Kernaghan, District Counsel, IRS, Philadelphia, PA, for I.R.S.

Edward Sparkman, Philadelphia, PA, Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

MERCIDENE H. BLACKERBY ("the Debtor") faces, for the second time, a contention by the United States of America's Internal Revenue Service ("the IRS"), that a large portion of the IRS' claim of over $116,000 is secured and that, as a result, her Second Modified Chapter 13 Plan ("the Plan") cannot be confirmed pursuant to 11 U.S.C. § 1325(a)(5). The primary issue at hand at this juncture is whether certain "renewal commissions" ("the Commissions") that the Debtor has been receiving from State Farm Insurance Company ("State Farm") can be reached by the tax lien of the IRS.

Consistent with our recent prior decisions in this case, *In re Blackerby*, 1997 WL 30865 (Bankr.E.D.Pa. Jan. 21, 1997) (*"Blackerby I"*) (tax lien on exempt property is not subject to avoidance); and in *In re Marlin*, 1997 WL 20454 (Bankr.E.D.Pa. Jan. 16, 1997) (a debtor's right to receive retirement benefits except in the case of a very limited contingency is subject to a tax lien), we hold that the Commissions are reachable by the IRS' tax lien. Since we ordered that dismissal was to follow if the Plan could not be confirmed for any reason, the Debtor's case is dismissed.

### B. FACTUAL AND PROCEDURAL HISTORY

The Debtor filed her individual Chapter 13 bankruptcy case over a year ago, on April 17, 1996. The confirmation hearing was initially scheduled on October 31, 1996. In response to a motion of the Standing Chapter 13 Trustee, Edward Sparkman, Esquire ("the Trustee"), to dismiss this case because the initial plan was insufficient to pay all secured and priority claims, the Debtor filed, *inter alia*, on November 22, 1996, an Objection to the Proof of Claim of the IRS and a Motion to Avoid the Lien of the IRS and to Declare the [then] $10,012.00 Secured Portion of the IRS Claim Unsecured ("the Objection").

In *Blackerby I*, we denied the Objection insofar as it attempted to eliminate the $4,012.00 secured portion of an amended

proof of claim filed by the IRS. The IRS' amended claim also included an uncontested priority portion of $36,309.13. In so concluding, we first held that the Debtor could not invoke 11 U.S.C. § 545(1)(D) because she was unable to contend that the lien attached as a result of her insolvency. *Id.* at *1–*3. Next, we held that the breadth and vitality of the federal tax lien, as provided by 26 U.S.C. § 6321, precluded avoidance of the tax lien merely because the property securing it was exempt from levy. *Id.* at *3. Finally, we held that the foregoing conclusion was codified in 11 U.S.C. § 522(c)(2)(B). *Id.*

Our *Blackerby I* order, *id.* at *1, allowed the Debtor to file an amended plan consistent with our order by January 24, 1997. It also scheduled what we warned could be a final confirmation hearing on February 20, 1997.

Although the Debtor filed an amended plan which appeared to be consistent with *Blackerby I*, the IRS raised a new issue, basically that presently before us, in objections to this plan filed on February 18, 1997. Therein, the IRS alleged that it retained a security interest in the Commissions. The IRS contended that the Debtor's failure to list the Commissions as part of her personal property on Schedule B (she had referenced same as $1,000 monthly "income from sale of business" on Schedule I) had caused it to overlook its lien in the Commissions until that time. An amended proof of claim, filed February 25, 1997, increased the secured portion of the IRS' claim from $4,012.00, as asserted in *Blackerby I*, to $55,544.40, in addition to its $36,309.23 priority portion.

On February 20, 1997, not having fully understood the significance of IRS' latest assertions, we allowed the Debtor until February 21, 1997, to file a further amended plan which would either be confirmed at a final confirmation hearing of March 20, 1997, or the case would be dismissed.

The Debtor filed the Plan on February 21, 1997, as directed. It provided that the Debtor would pay $381 for 10 months, $635 for 24 months, and $960 for 26 months. While these payments would total "no less than $43,991.10," per the Plan (the total appears to be $44,010), they would clearly be insuffi-

cient to pay the IRS' secured *and* priority claims totalling $91,853.53. The IRS therefore filed objections to the Plan based on 11 U.S.C. § 1325(a)(5). Additionally, the IRS raised objections based on 11 U.S.C. § 1325(a)(6), contending that the . Debtor would be unable to make the $960 monthly payments, especially since payment of the Commissions will cease at the end of the year 2000, and the Debtor's payments will continue through April 2001; and 11 U.S.C. § 1325(b)(1)(B), contending that the Debtor's Schedules I and J indicated that $635 monthly excess disposable income was available during the first 10 plan months, when only $381 monthly was paid.

At the March 20, 1997, hearing, we initially expressed chagrin that the parties had not uncovered this dispute earlier, at least as of the time that the relatively insignificant differences resolved in *Blackerby I* were before the court. The Debtor contended that the IRS had sufficient information at its disposal to raise these issues sooner. The IRS claimed that the Debtor's failure to include the Commissions on Schedule B was responsible for its belated actions. Neither party attempted to press misconduct or waiver of the other as an issue in the discussion of the oversight of the issue. Instead, they presented to us a handwritten Stipulation of Facts and thereafter a testimonial record on the current objections, featuring the testimony of the Debtor and emphasizing the issue of whether the IRS had a lien on the Commissions. After the hearing, we allowed the parties until April 11, 1997, to brief the issue, warning the Debtor that

> [i]n light of the entry of past orders indicating that the Debtor would be restricted in further opportunities to amend her plan, the Debtor is advised that, if confirmation of the Plan is denied for any reason, this case will most probably be dismissed.

The Stipulation and testimony established that the Debtor was formerly an independent insurance agent who sold insurance policies for State Farm, as well as several other insurance companies. After the agency for which she worked closed, she obtained employment directly from State Farm in another capacity. Upon ceasing to be employed as an independent insurance agent, the Debtor became entitled to the Commissions from State Farm. The Commissions paid to her were based on the insurance policies that she had sold prior to ending her relationship with State Farm as an independent insurance agent. A letter was sent to the Debtor by State Farm on January 26, 1995, advised her that, effective January 31, 1995, she would begin to receive her "termination payments," *i.e.,* the Commissions on insurance policies sold by her prior to January 1, 1995, when she joined State Farm as an employee, and that the payments would continue for the next five years. This letter does not indicate that the Debtor will have to provide any further services to State Farm in order to receive the Commissions.

The IRS had filed a Notice of Federal Tax Lien against Debtor prior to the date on which she filed her bankruptcy petition. It now claims that the tax lien embraces the Commissions. The only authority cited by the Debtor in favor of her position that the tax lien does not reach the Commissions is Rev.Rul. 90–72, 1990–2 C.B. 211, in which the IRS determined that renewal commissions paid to an insurance agent after his retirement were taxable under the Self Employment Contributions Act (SECA), and hence were comparable to wages, because they were derived from the retired agent's services as an insurance agent while he was still employed as such. Wages, the Debtor contends, are exempt from the federal tax lien, citing 26 U.S.C. § 6321. Actually, § 6321 sets forth the general rule that the tax lien attaches to "all" of a taxpayer's "property and rights to property, whether real or personal," while 26 U.S.C. §§ 6334(a)(9), (d) provide an exemption of wages from levy. The IRS responds that the Commissions are fixed without the Debtor's obligation to provide services, unlike wages, and that, in any event, wages are subject to the federal tax lien.

## C. DISCUSSION

■ Other Revenue Rulings and numerous other authorities, including *Blackerby I* and *Marlin, supra,* establish that IRS' position that it has a lien on the Commissions is

correct. In Rev.Rul. 54–312, 1954–2 C.B. 327, the IRS determined that renewal commissions received by a full time insurance agent for the sale of insurance policies "are deemed to be remuneration for services performed at the time the sales were consummated." Thus, it held that the renewal commissions were wages taxable under the Federal Insurance Contributions Act (FICA), but for which the consideration was past services rather than services to be performed. This Revenue Ruling was later distinguished in Rev.Rul. 59–103, 1959–1 C.B. 259 (when an insurance agent is engaged full time as the agent for one insurance company, he will be deemed to be an employee of that insurance company if his entire business activity is the solicitation of insurance policies for that one insurance company, and thus he must pay taxes under FICA; an agent who is not an employee of insurance company must pay taxes on the renewal commissions under SECA), and was further distinguished in Rev.Rul. 58–177, 1958–1 C.B. 351 (insurance agent engaged by two related insurance companies was deemed an employee of both companies for federal employment tax purposes under FICA; the IRS applied § 1426(d) of FICA, as amended by the Social Security Act Amendments of 1950, which stated that full time insurance agents are deemed employees of the insurance company). The Debtor, as noted above, cites only to Rev.Rul. 90–72 for the principle that, since the IRS has determined that renewal commissions are wages, and since the Bankruptcy Code exempts wages from levy, then the IRS's tax lien cannot attach to the Debtor's renewal commissions.

■ Pursuant to 26 U.S.C. § 6321, a lien can be recorded in favor of the United States upon a taxpayer's property and rights to property, both real and personal, when that taxpayer refuses to pay taxes upon demand. *See e.g., United States v. National Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 2923–24, 86 L.Ed.2d 565 (1985); *In re Atlantic Business & Community Development Corp.,* 994 F.2d 1069, 1071–75 (3d Cir. 1993); *Blackerby I,* at *3; *Marlin, supra,* at *2; and *In re CS Associates,* 161 B.R. 144, 146–47 (Bankr.E.D.Pa.1993), *aff'd,* 184 B.R.

458 (E.D.Pa.1994). Decisional law holds that the federal tax lien attaches to all of a delinquent taxpayer's after-acquired property as well as to the taxpayer's then existing right to receive property in the future. *See, e.g., In re Connor,* 27 F.3d 365, 366 (9th Cir.1994); *Marlin, supra,* at *1; *In re Wessel,* 161 B.R. 155, 159 (Bankr.D.S.C.1993); and *In re Nevada Environmental Landfill,* 81 B.R. 55, 56 (Bankr.D.Nev.1987).

However, there is also case law holding that a federal tax lien does not attach to property acquired post-petition. *Connor, supra,* 27 F.3d at 366 (citations omitted). A debtor has a vested right to receive payments when the debtor does not have to do anything more in order to receive the payments, *e.g.,* does not have to perform any further services, does not have to sell more insurance policies, or does not have to remain with the company. *See Nevada Environmental, supra,* 81 B.R. at 56; and Rev.Rul. 55–210, 1955–1 C.B. 544.

■ Furthermore, the federal courts have determined that, when federal tax liens arise, they attach to all of a taxpayer's rights to property, including any contractual right to receive monetary payments. *See Marlin, supra,* at *1; *Wessel, supra,* 161 B.R. at 160; and *Nevada Environmental, supra,* 81 B.R. at 56. This is the case even when the payments due are under a contract that is contingent, *Bigheart Pipeline Corp. v. United States,* 600 F.Supp. 50, 53 (N.D.Okl.1984), *aff'd,* 835 F.2d 766 (10th Cir.1987) (tax lien can attach to a contingent interest under 26 U.S.C. § 6321 and applicable decisional law), or when the payments under the contract are due to be received at a future date. *See Fried v. New York Life Ins. Co.,* 241 F.2d 504, 505 (2d Cir.), *cert. denied,* 354 U.S. 922, 77 S.Ct. 1382, 1 L.Ed.2d 1437 (1957) (disability payments); *Marlin, supra* (pension benefits); *Wessel, supra,* 161 B.R. at 160 (citing *Randall v. H. Nakashima & Co.,* 542 F.2d 270 (5th Cir.1976)); and *Nevada Environmental, supra,* 81 B.R. at 56 (trash removal contract). Some courts, however, hold that, when payments under a contract are contingent upon some other action or occurrence, the taxpayer does not have an unqualified

right to the payment and the payment is deemed to be after-acquired property. *In re Selner,* 18 B.R. 420, 421 (Bankr.S.D.Fla. 1982).

Federal tax liens continue to attach to a debtor's contractual right to receive monetary payments in the future. *See Dewsnup v. Timm,* 502 U.S. 410, 418, 112 S.Ct. 773, 778–79, 116 L.Ed.2d 903 (1992); *Marlin, supra,* at *1; *Wessel, supra,* 161 B.R. at 160; and Rev.Rul. 55–210, 1955–1 C.B. 544. This is because tax liens ordinarily survive bankruptcy, since pre-existing liens remain enforceable against property even after the individual's personal liability had been discharged. *See Dewsnup, supra,* 502 U.S. at 418, 112 S.Ct. at 778–79; *Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991); *Farrey v. Sanderfoot,* 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991); *Connor, supra,* 27 F.3d at 366; and *Wessel, supra,* 161 B.R. at 160. Consequently, when a federal tax lien remains attached to a debtor's contractual right to receive monetary payments, the IRS can administratively seize the payments even if the debtor has received a discharge in bankruptcy. *See Connor, supra,* 27 F.3d at 366; and *Wessel, supra,* 161 B.R. at 160.

■ Moreover, when a debtor has an unqualified right to receive certain payments prior to the date on which the debtor files bankruptcy, such as disability benefits, annuity payments, or retirement pay, which is not contingent upon the debtor's provision of future services or upon some future occurrence, the right to receive the payments will be deemed to be fully vested. *See Connor, supra,* 27 F.3d at 366 (retirement benefits), and *Marlin, supra,* at *2 (same). In such a situation, the right to receive these unqualified future payments constitutes "property" acquired pre-petition which is within the reach of § 6321. *Id. See also Glass City Bank v. United States,* 326 U.S. 265, 267–68, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945); *Seaboard Surety Co. v. United States,* 306 F.2d 855, 859 (9th Cir.1962) (a debtor's right to receive payments under a contract was "property" to which a lien attached before the debtor became entitled to receive the

payments under the contract); and *Fried, supra,* 241 F.2d at 505 (disability payments to be received in the future are such property).

There are, however, several categories of property which are exempt from federal tax levy, pursuant to 26 U.S.C. § 6334. *See Blackerby I,* at *3; *In re Riley,* 88 B.R. 906, 912 (Bankr.W.D.Wis.1987); and *In re Driscoll,* 57 B.R. 322, 327 n. 6 (Bankr.W.D.Wis. 1986). Only two of these exemptions are relevant in this case, those found at 26 U.S.C. §§ 6334(a)(9) and (d). Subsection (a)(9) provides that property exempt from an IRS levy includes any amount of money

> received by an individual as wages or salary for personal services, or income derived from other sources, during any period, to the extent that the total of such amounts payable to or received by him during such period does not exceed the applicable exempt amount determined under subsection (d).

Subsection (d)(1) states that

> [i]n the case of an individual who is paid or receives all of his wages, salary, and other income on a weekly basis, the amount of the wages, salary, and other income payable to or received by him during any week which is exempt from levy under subsection (a)(9) shall be the exempt amount.

■ However, while this enumerated property may be exempt from levy, it is not shielded from the lien itself. *See United States v. Barbier,* 896 F.2d 377, 378–79 (9th Cir.1990); *In re King,* 137 B.R. 43, 46 (D.Neb.1991); and *In re Beard,* 112 B.R. 951, 953 (Bankr.N.D.Ind.1990). The fact that the property may be exempt from levy therefore does not affect nor change the fact that the property is subject to a federal tax lien. *See In re Sills,* 82 F.3d 111, 113–14 (5th Cir. 1996); *In re Voelker,* 42 F.3d 1050, 1051–52 (7th Cir.1994); *Blackerby I, supra,* at *3; *In re Straight,* 200 B.R. 923, 932 (Bankr.D.Wyo. 1996), *aff'd,* 207 B.R. 217 (Bankr. 10th Cir. 1997); *In re Schreiber,* 163 B.R. 327, 334 (Bankr.N.D.Ill.1994); and *Beard, supra,* 112 B.R. at 953.

Thus, the Debtor's argument that the renewal commissions are wages and, as a result, are exempt from the IRS' tax lien is erroneous. As we established by our earlier ruling in this case, § 6334 concerns property exempt from levy, not exempt from liens. *Blackerby I,* at *3. The renewal commissions, even if they are wages, would be exempt from a federal tax levy but not from an IRS tax lien, which is the question at issue.

■ With regard to the issue of whether the Commissions are property and part of the Debtor's bankruptcy estate, which should have been disclosed on the Debtor's Schedule B, the courts are, with one apparent exemption, inclined to favor the position of the IRS that they should have been so disclosed. An example of the majority view, *In re Froid,* 109 B.R. 481 (Bankr.M.D.Fla.1989), involved a dispute between the debtor and trustee regarding the validity of a lien of the Federal Deposit Insurance Corporation ("the FDIC") against renewal commissions to be paid to the debtor on renewals of life insurance policies sold by him pre-petition. In that case, the debtor, similar to the instant Debtor, had a contract with an insurance company which entitled him to be paid renewal commissions for all renewals of life insurance policies sold by him in the first nine years after the life insurance policy was issued, regardless of whether or not the debtor remained an insurance agent of that insurance company. *Id.* at 482. His right to the commissions was thus vested, in that he did not have to do anything further to receive the commissions after he sold the life insurance policies. *Id.*

The debtor obtained a bank loan in the amount of $800,000, for which he signed a note and security agreement. The security agreement pledged his insurance commissions from all policies sold by him, among other things, as security for the loan. *Id.* After the bank failed, the FDIC was appointed as the receiver for the bank. Subsequently, the debtor filed a Chapter 7 bankruptcy petition. Shortly thereafter, the trustee filed an adversary action against him for a determination as to who would be entitled to receive the debtor's renewal commissions. The trustee and the debtor agreed to split the commissions equally, thus resolving the adversary action. The settlement had no effect on the FDIC's actual or potential claims to the renewal commissions. *Id.*

The debtor further argued that, while he was not required to continue his employment with the insurance company in order to continue to receive the renewal commissions, it was his belief that, if he left the company, many of the policies that he sold pre-petition would lapse because he could not render personal service to the policy holders post-petition. *Id.* at 483. Based on this, the debtor contended that the renewal commissions were earned post-petition and therefore should not be subject to the FDIC's lien pursuant to 11 U.S.C. § 552. *Id.* Thus, the issue to be determined by the court was whether the renewal commissions were property of the debtor's bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1). *Id.*

The court held that,

[a]lthough the Debtor's personal service to his clientele postpetition has helped to make him a success in the industry, it is clear that the bulk of the work to develop the relationships with these clients was performed prepetition. Further, the renewal commissions would still be paid even if the Debtor terminated his relationship with [the insurance company].... *Renewal commissions which are not conditioned on future services, will be deemed property of the estate. In re Parker,* 9 B.R. 447 (Bankr.M.D.Ga.1981)[;] *In re Malloy,* 2 B.R. 674 (Bankr.M.D.Fla.1980).

. . . . .

Therefore, this Court is satisfied that the Debtor earned his right to the renewal commissions prepetition, that the renewal commissions were vested prepetition, and thus, the renewal commissions are properties of the estate.

*Id.* (emphasis added). *See also Beeghly v. Wilson,* 152 F.Supp. 726, 733 (W.D.Iowa 1957).

In *Parker, supra,* the debtor was a former insurance salesman who was receiving renewal commissions which were not conditioned upon his providing any future services. 9 B.R. at 449. The court, following the decision in *Mutual Trust Life Ins. Co. v.*

*Wemyss,* 309 F.Supp. 1221, 1230 (D.Me. 1970), held that, when renewal commissions are paid and are not contingent upon the provision of future services, the contractual right to receive the renewal commissions passes to the bankruptcy trustee as property of the estate which is non-exempt. 9 B.R. at 449–50. Other cases so holding are *In re Tomer,* 128 B.R. 746, 761 (Bankr.S.D.Ill. 1991), *aff'd,* 147 B.R. 461 (S.D.Ill.1992); *In re Rankin,* 102 B.R. 439, 441 (Bankr.W.D.Pa. 1989); *In re Kervin,* 19 B.R. 190, 193 (Bankr. S.D.Ala.1982) (commissions were contingent upon future services, and thus were deemed not to be property of the debtor's estate); and *Selner, supra,* 18 B.R. at 421.

Conversely, in *In re Hester,* 65 B.R. 542 (Bankr.M.D.Fla.1986), the debtor was to receive, for a five year period, monthly termination pay in the form of commissions on general liability and life insurance policies that he had previously sold and which were still in effect, *i.e.,* renewal commissions from his former employer-insurance company. *Id.* at 543. The IRS filed a notice of levy against the debtor's property, money and credits belonging to him which were being held by the insurance company. One year later the debtor filed a Chapter 7 bankruptcy petition. *Id.* at 544. The issue before the bankruptcy court was whether notice of levy given by the government was sufficient to attach a tax lien on that property. *Id.*

The court determined that the IRS' tax lien did not attach to the debtor's termination pay until the debtor had a right to receive the money. *Id.* In that regard, the court held that, since the debtor received the termination pay from renewal commissions on insurance policies entered into prepetition, the debtor's right to receive the commissions did not accrue until they were earned, and since the debtor did not have a right to immediately collect the commissions that were to be earned in the future, the IRS' tax lien "attached to the termination pay only as it accrued and did not attach to the payments which were to be earned in the future." *Id.* Accordingly, the court held that, when the debtor filed bankruptcy, his right to receive the termination payments became property of his bankruptcy estate and the IRS' asser-

tion of any tax lien on the commissions to be earned in the future was precluded by 11 U.S.C. § 362(a)(4). *Id.* However, the court also held that the IRS did have a claim against the money which had been escrowed for commission payments that had accrued up to the date that the debtor filed his bankruptcy petition. *Id.* The trustee, meanwhile, was held to be entitled to all funds accrued in escrow post-petition. *Id.*

█ We are inclined to follow the view that the position of all courts except *Hester,* holding that renewal commissions which are not contingent upon any future action by the debtor are not property of the debtor's bankruptcy estate. A slight contingency in the receipt of a payment otherwise unconditionally due would not seem sufficient to constitute an exception to the general rule that any significant contingency takes the earnings beyond the scope of property of the estate. *Compare Marlin, supra,* at \*3 (the condition of the debtor's receipt of a pension upon his refraining from competition with the company paying his pension and from engaging in any fraudulent or dishonest acts were found insufficiently significant to preclude a lien on the debtor's pension). The test to determine whether renewal commissions or "termination pay" are property of a debtor's bankruptcy estate under § 541 of the Code is whether payment of the commissions or other compensation is for services performed by the debtor after the commencement of the bankruptcy case. *Kervin, supra,* 19 B.R. at 193. If it is, then the commissions are not property of the estate. *Id.* If payment of the commissions is only for services performed by the debtor pre-petition, then the commissions are property of the estate. *Id.*

The contract between the Debtor herein and State Farm did not stipulate that the Debtor had to do anything further to receive her "termination pay." In fact, the Debtor herself testified that she would receive the termination pay regardless of whether she had taken her current position with State Farm or not. She also testified that she was not obligated to provide any further services to State Farm to receive the Commissions. Thus, her right to receive the Commissions was fully vested pre-petition.

**144**

Consequently, we hold that, since the Commissions paid to the Debtor are not contingent upon her performance of any further services on behalf of State Farm, since the Debtor's right to receive the payments vested pre-petition, and because her right to the Commissions accrued prior to the filing of her bankruptcy petition, the Commissions are part of her bankruptcy estate and thus can clearly be reached by the IRS' tax lien. The objection of the IRS to confirmation of the Plan, which does not pay its secured claim in full, is thus well-taken, and confirmation of the Plan must be denied for that reason.

■ As we indicated in our order on March 20, 1997, we are not inclined to give the Debtor any additional opportunities to propose the elusive confirmable plan in the context of this bankruptcy case. We allowed some slight latitude in that order ("this case will most probably be dismissed") because of the possibility that our decision on the IRS' objections to the Plan would allow the Debtor to propose a confirmable plan after making some relatively minor adjustments to the Plan. However, we cannot classify the instant Plan as redeemable with minor plan amendments. Since the IRS has valid secured and priority claims totalling over $91,-000 and the Debtor is making payments which total only about $44,000, there would be a serious question of feasibility under § 1325(a)(6) raised with respect to any plan which satisfied § 1325(a)(5).

Therefore, it appears extremely unlikely that the Debtor could propose a confirmable plan. In any event, her multiple unsuccessful efforts over the past year and her reiteration of arguments which, for all practical purposes, were disposed of in a prior decision in this same case, as well as the only slightly less recent *Marlin* decision, combine to, in our view, disqualify the Debtor from further efforts in the context of this case. We will therefore proceed to dismiss this case.

■ Apart from the issue of the large amount of the IRS' secured and priority claims unpaid by the Plan, the other objections raised by the IRS, *e.g.,* § 1325(a)(6) feasibility and the Debtor's alleged lack of compliance with § 1325(b)(1)(B), are not very

substantial. The feasibility requirement of § 1325(a)(6) is not rigorous. *See In re Smith,* 179 B.R. 437, 449–50 (Bankr.E.D.Pa. 1995) (citing *In re Oglesby,* 150 B.R. 620, 627–28 (Bankr.E.D.Pa.), *remanded on other grounds,* 158 B.R. 602 (E.D.Pa.), *reinstated on remand,* 161 B.R. 917 (Bankr.E.D.Pa. 1993), *aff'd,* C.A. No. 94–0617 (E.D.Pa. April 7, 1994)). We would certainly be inclined to give the Debtor at least the chance to obtain the additional income from a second job which she thinks that she could obtain to pay the $960 monthly payments, even after the Commissions cease over the last four months of the Plan.

■ The IRS also contends that the Plan violates § 1325(b)(1)(B) because it called for payments of only $381 over its first 10 months, while the Debtor is prepared to pay $635 with the same reported income and expenses over the next 24 months. We note, as in *Smith, supra,* 179 B.R. at 448, that this argument that the Debtor is not paying enough is at bottom inconsistent with the argument that the Plan is infeasible because she is committing to pay more than her income will support. Chapter 13 debtors must be allowed some flexibility in making payments which deviate at least somewhat from the exact figure which is neither too low nor too high.

The IRS' objection is particularly not well taken when the Debtor's response is considered. The Debtor testified that, because she misunderstood when her payments were to commence, she fell behind from the outset. Also, her Plan apparently contemplated a lower total amount of payments than we deem it necessary to satisfy § 1325(a)(5). In any circumstances where a debtor begins payments late and/or remits payments at a rate lower than it is later established is necessary to achieve confirmation, it would seem that the debtor's only recourse is to increase payments later in the plan period.

The issue which we believe is more important is whether the Debtor's total payments are sufficient to make the entire sum of payments necessary to achieve confirmation. If we were to sustain the IRS' objection under § 1325(b)(1)(B), the Debtor's only re-

course would be to make up the payments somewhere. *See In re Rothman,* 206 B.R. 99, 103–07 (Bankr.E.D.Pa.1997) (we established the total amount of payments due from the debtor to satisfy § 1325(b)(1)(B) objections; we did not express concern over precisely when the total payments necessary had to be made).

The Debtor cannot go back in time and relive the first 10 months of her Plan. All she can do is make up the "short" payments somewhere or dismiss this case voluntarily and file again. In a practical sense, the Debtor proposed to make up the short early payments by making $960 monthly payments at the end of her Plan. Ironically, the IRS objects to the large amount of the later payments as rendering the Plan infeasible for the Debtor to complete. Again, the IRS seems to suggest that a debtor must propose a perfect plan which fits in a narrow range between § 1325(a)(6) feasibility and § 1325(b)(1)(B) payment of all disposable income for the entire plan payment period to achieve confirmation. We believe that allowing a debtor some leeway, particularly on the feasibility end of the requirements, is a more practical result.

If the Debtor cannot realistically make up the short payments, she would have no recourse but to voluntarily dismiss her case and begin again. At a certain point, and perhaps the Debtor is at that point, a dismissal and refiling are the only logical solution.

Of course, all of the foregoing discussions regarding §§ 1325(a)(6) and 1325(b)(1)(B) are rendered in large part academic by our decision that the Plan fails to comply with § 1325(a)(5) in light of the unassailability of the asserted secured and priority positions of the IRS' claim, which requires us to dismiss this case involuntarily. The Debtor is not precluded from beginning again, but it will obviously be difficult for her to satisfy the secured and priority claims of the IRS upheld in this decision. Perhaps she could prepare a feasible plan by proposing to pay the secured portions of the IRS' claim outside of the Plan. *See In re Evans,* 66 B.R. 506, 509–11 (Bankr.E.D.Pa.1986), *aff'd,* 77 B.R. 457 (E.D.Pa.1987).

### D. CONCLUSION

An order consistent with the foregoing resolution, sustaining the IRS' principal objection to the Plan and dismissing this case, will be entered.

### ORDER

AND NOW, this 24th day of April, 1997, after a hearing of March 20, 1997, on the objections ("the Objections") of the United States of America's Internal Revenue Service ("the IRS") to confirmation of the Debtor's Second Modified Chapter 13 Plan ("the Plan"), upon consideration of the briefs submitted by the parties after that hearing, and in light of the terms of our Order of March 20, 1997, it is hereby ORDERED AND DECREED as follows:

1. The IRS' Objection to the Plan based on 11 U.S.C. § 1325(a)(5) is SUSTAINED, as the IRS has a valid tax lien against the renewed commissions received by the Debtor from State Farm Insurance Company.

2. Confirmation of the Plan is DENIED.

3. This case is DISMISSED.