In re William A. HERRERAS, Debtor.

United States of America (Internal Revenue Service), Appellant,

v.

Michael S. Kogan, Chapter 7 Trustee, Appellee.

No. CV 00–05959 CAS.
Bankruptcy No. ND–97–10895–RR.

United States District Court,
C.D. California.

Nov. 7, 2000.

William Beall, Santa Barbara, CA, for debtor.

Alejandro Mayorkas, U.S. Attorney for Central Dist. of California, Los Angeles, CA, Gregory A. Roth, Assistant U.S. Attorney, Los Angeles, CA, for appellant.

SNYDER, District Judge.

## I. *Introduction*

This matter is an appeal from an order of the bankruptcy court. The question presented is whether proceeds, which are held by the trustee, of the sale of an attorney's pre-petition work in progress, are proceeds of "property" subject to a federal tax lien under I.R.C. § 6321. The debtor attorney surrendered the assets of his law practice, including the work in progress, to the trustee after filing his Chapter 7 petition. Subsequently, the debtor repurchased the law practice from the trustee pursuant to a settlement agreement. The Internal Revenue Service ("IRS") then filed a proof of claim, seeking to enforce a preexisting tax lien against the proceeds in the hands of the trustee. The trustee objected to the application to the tax lien of that part of the proceeds which was attributable to the work in progress. The bankruptcy court sustained the objection, holding that the tax lien did not attach to those proceeds, on the ground that the debtor did not have an unqualified right to receive fees from the in-progress cases at the time the petition was filed. The IRS filed this appeal. For the reasons stated in this order, the Court reverses the order of the bankruptcy court.

## II. *Standard of Appellate Review*

The district court reviews decisions of the bankruptcy court in the same manner as would the Court of Appeals. *See In re George,* 177 F.3d 885, 887 (9th Cir.1999). Thus, the Court reviews the bankruptcy court's conclusions of law *de novo,* and reviews its factual findings for clear error. *Id.* Mixed questions of law and fact are also reviewed *de novo. In re Chang,* 163 F.3d 1138, 1140 (9th Cir.1998).

## III. *Facts*

There is no dispute regarding the essential facts of the case. On February 21, 1997, debtor William A. Herreras filed for

protection under chapter 7 of the Bankruptcy Code. *See* Docket, Appellant's Excerpts of Record ("E.R.") Ex. 16. The bankruptcy estate included the debtor's pre-petition business assets, consisting of his law library, business equipment, bank accounts, life insurance, accounts receivable, appellate accounts receivable, goodwill, and work in progress. *See* Settlement Agreement, E.R. Ex. 12 ¶ 1. The debtor was a workers' compensation lawyer who generally handled cases on a contingent fee basis. *See* Letter of Sandra K. Fahey, Debtor's Attorney, Proposing Settlement Terms, May 29, 1997. E.R. Ex. 8, Bates Stamp No. 108.[1] The debtor agreed to pay $113,852.00 to recover these assets from the estate, pursuant to a settlement agreement reached by the parties and approved by the bankruptcy court on September 17, 1997. *See* Settlement Agreement, E.R. Ex. 12 ¶ 2; Order Approving Compromise of Controversy, E.R. Ex. 13. Of the total amount, the parties attributed $66,232.00 to the work in progress. *See* Fahey Letter, E.R. Ex. 8, Bates Stamp No. 108.

The IRS filed a proof of claim in bankruptcy court on August 20, 1997. The proof of claim listed secured claims totaling $707,469.61 in assessed taxes, penalties and interest, based on five tax liens filed on December 22, 1992, and July 6, 1993. The claim also listed an unsecured priority claim of $15,373.00 for unassessed taxes. Thus the IRS, total claim was for $722,942.61. *See* Proof of Claim, E.R. Ex. 1, Bates Stamp No. 15. On January 24, 2000, the trustee filed a motion objecting to the secured portion of the IRS' claim. *See* Motion Objecting to Claims, E.R. Ex. 1, Bates Stamp No. 1. The trustee apparently believed that the lien could not attach to money the estate obtained pursuant to the settlement agreement, but only to the law practice assets themselves,

which had been transferred back to the debtor:

> [T]he tax lien obtained by the IRS was for a security interest in all property and rights to property of the Debtor, however, the assets of the estate resulted from the sale of the Debtor's law practice back to the Debtor. The Trustee is not in possession of any assets or proceeds of assets from which the claimant may satisfy its claim. Any property with which the IRS may satisfy its claim is in the possession of the Debtor.

*Id.* at Bates Stamp No. 6–7.

On March 29, 2000, the bankruptcy court held a hearing on the trustee's motion. After hearing argument, the court continued the hearing to allow the parties to submit supplemental briefing on the question of which assets' proceeds the tax lien attached to. *See* Transcript of Proceedings, March 29, 2000, E.R. Ex. 14 at Bates Stamp No. 137–41. At a subsequent hearing on May 16, 2000, the bankruptcy court ruled from the bench that the tax lien attached to the debtor's bank accounts, life insurance, accounts receivable, and appellate accounts receivable, with a total value of $47,620.00, and did not attach to work in progress, valued at $66,232.00 *See* Transcript of Proceedings, May 16, 2000, E.R. Ex. 15, at Bates Stamp No. 150. The court relied on *In re Connor* [94–2 USTC ¶ 50,296], 27 F.3d 365 (9th Cir. 1994). *See id.* at Bates Stamp No. 150. In *Connor*, the Ninth Circuit held that post-petition payments of a state judge's pension were property to which a pre-petition tax lien attached because the pension had vested before the debtor filed his Chapter 7 petition; as a result the debtor had an unqualified pre-petition right to collect the pension payments. *See id.* at Bates Stamp 148. The court interpreted *Connor* to mean that the existence of an unqualified right to be paid is "the test . . .

1. The IRS disputes the contention that all the debtor's cases were handled on a contingency basis, stating that "at least some" were not. *See* Appellant's Reply Brief at 3–4. The question whether some or all of the debtor's cases were contingent fee cases is immaterial. The IRS prevails even if all the cases were contingent fee cases.

for what future monies are subject to the tax lien in bankruptcy." *Id.* The court concluded that the debtor Herreras did not have an unqualified right to collect any money in his pending cases; therefore, the tax lien could not attach to the proceeds of the work in progress held by the trustee. *See id.* at Bates Stamp No. 150.

On June 1, 2000, the bankruptcy court entered an order stating that the tax lien is limited to assets collected by the trustee in the amount of $47,620.00, and does not attach to the additional $66,232.00 collected by the trustee representing work in progress. The government's appeal followed.[2]

## IV. *Analysis*

### A. *The Amount to Which the Tax Lien Attaches*

The IRS argues in this appeal that the tax lien should attach to the proceeds of the work in progress. The trustee argues that it should not.

■ The failure to pay taxes owing to the federal government after demand creates a lien in favor of the United States, in an amount including the taxes owed, penalties, interests and costs, "upon all property and rights to property, whether real or personal, belonging to" the taxpayer. I.R.C. § 6321. In general, a federal tax lien attaches not only to property owned by the taxpayer at the time the lien is created, but to all after-acquired property as well, until the lien's expiration. *Glass City Bank of Jeanette v. United States* [45–2 USTC ¶ 9449], 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945). An exception to this rule, however, is that the lien does not attach to property acquired by the taxpayer after the taxpayer files a bankruptcy petition. *In re Connor* [94–2 USTC ¶ 50,-296], *supra,* 27 F.3d at 366; *In re Braund* [70–1 USTC ¶ 9237], 423 F.2d 718, 719 (9th

Cir.1970). The only question before the Court is whether Herreras' work in progress was "property" or "rights to property" within the meaning of I.R.C. § 6321 before Herreras' bankruptcy filing.

■ California law supports the IRS' view that the work in progress was property for purposes of I.R.C. § 6321 before filing of the bankruptcy petition. A lawyer's work in progress is treated as a valuable asset under California law in other contexts, primarily the context of division of marital property. *See In re Marriage of Morrison,* 20 Cal.3d 437, 453, 143 Cal.Rptr. 139, 573 P.2d 41 (1978) (holding that in determining the value of a law practice for purposes of marital property division, the assets considered should include work in progress partially completed but not billed as a receivable, work completed but not billed, and goodwill); *Kilbourne v. Kilbourne,* 232 Cal.App.3d 1518, 1522, 284 Cal.Rptr. 201 (1991) (same). California courts recognize that "[a]t any given moment the major assets of most law firms are not capital assets, but those related to the direct rendering of professional services, most particularly accounts receivable and work in process." *In re Marriage of Green,* 213 Cal.App.3d 14, 21, 261 Cal.Rptr. 294 (1989).

■ The proposition that a lawyer's work in progress is property under California law is insufficient on its own, however, to show that it is property for purposes of § 6321. The Supreme Court has stated:

As restated in [*United States v.*] *National Bank of Commerce* [85–2 USTC ¶ 9482], [472 U.S. 713, 727, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985)]: "The question whether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law," [472 U.S., at 727, 105 S.Ct. 2919, 85–2 USTC ¶ 9482].

---

**2.** It should be noted that far less than $66,232.00 is actually at stake in this appeal. The effect of the Court's decision about the tax lien depends on the priority of the other creditors' claims. The government concedes that even if 100% of the proceeds of the sale of the debtor's law practice were exempted from the lien, the other creditors would still receive only $3,416.00. *See* Appellant's Reply Brief at 1.

We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as "property" or "rights to property" within the compass of the federal tax lien legislation. *Cf. Morgan v. Commissioner* [40–1 USTC ¶ 9210], 309 U.S. 78, 80, 60 S.Ct. 424, 84 L.Ed. 1035 (1940) ("State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed.").

*Drye v. United States* [99–2 USTC ¶ 51,-006], 528 U.S. 49, 120 S.Ct. 474, 481, 145 L.Ed.2d 466 (1999). In some instances, federal law treats as "property" for purposes of § 6321 rights that do not constitute property under state law. *See, e.g., 21 West Lancaster Corp. v. Main Line Restaurant, Inc.* [86–2 USTC ¶ 9516], 790 F.2d 354, 357–58 (3d Cir.1986) (holding that although a liquor license was not regarded as property under state law, it was property for purposes of § 6321, and was subject to a federal tax lien). In other, apparently rarer instances, federal law declines to treat as "property" for tax lien purposes rights treated as property rights under state law. *See, e.g., Aquilino v. United States* [60–2 USTC ¶ 9538], 363 U.S. 509, 513–16, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960) (remanding case for determination whether a contractor's rights to the funds at issue constituted a "beneficial interest" as opposed to "bare legal title" under state law; if they were only bare legal title, they would not constitute "property" under § 6321).

 In determining whether a state-law right constitutes "property" under § 6321, the Court bears in mind that the language of § 6321 "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *National Bank of Commerce* [85–2 USTC ¶ 9482], *supra*, 472 U.S. at 719–20, 105 S.Ct. 2919. Furthermore, "[w]hen Congress so broadly uses the term 'property,' we recognize … that the Legislature aims to reach every species of right or interest protected by law and having an exchangeable value." *Drye* [99–2 USTC ¶ 51,006, 99–2 , USTC ¶ 60,-363], *supra*, 120 S.Ct. at 480 (citations and internal quotation marks omitted).

It is on the basis of these principles that interests of uncertain status have often been held to be "property" for purposes of a § 6321 tax lien. *See, e.g., Plymouth Saving Bank v. United States* [99–2 USTC ¶ 50,807], 187 F.3d 203 (1st Cir.1999) (holding that federal tax lien attached to contract rights at the time the contract was made, even though the right to receive money under the contract would not become unconditional until the contract was subsequently performed); *Atlantic National Bank v. United States* [76–2 USTC ¶ 9483], 536 F.2d 1354, 210 Ct.Cl. 340 (1976) (holding that tax lien presently attached to monies due or to become due in the future under contract); *United States v. Hubbell* [63–2 USTC ¶ 9724], 323 F.2d 197 (5th Cir.1963) (holding that a subcontractor's claim against a building owner for duress was not contingent merely because it would take a lawsuit to reduce it to judgment or to collect it, and was not subject to any infirmity that would prevent attachment of a federal tax lien); *In re Weninger* [90–2 USTC ¶ 50,510], 119 B.R. 238 (Bankr.D.Colo.1990) (holding that a chose in action is property for purposes of tax lien); *In re Nevada Environmental Landfill*, 81 B.R. 55 (Bankr.D.Nev.1987) (holding that the fact that a taxpayer's right to proceeds of a contract may be dependent on performance of the contract does not mean that the proceeds are not property or rights to property of taxpayer subject to federal tax lien).

 The attorney's work in progress at issue in this case is similar to the interests at stake in the cases cited above. As noted above, there is some dispute as to whether all or only some of Herreras' cases in progress were contingent fee cases. If any were hourly fee cases, Herr-

eras was entitled pre-petition to be paid for hours already worked. But even if all were contingent fee cases, Herreras had a right to be paid contingent on a future event, and this is sufficient under *Plymouth Savings Bank* and *Nevada Environmental Landfill, supra.* Moreover, Herreras' conditional rights were "protected by law and [had] an exchangeable value," *Drye* [99–2 USTC ¶ 51,006, 99–2 , USTC ¶ 60,363], *supra,* 120 U.S. at 480. Such rights are protected by law in that they are enforceable upon the happening of the condition and are treated as valuable assets in such contexts as that of marital property division; and it is clear that they had an exchangeable value because Herreras purchased them from the trustee. The trustee argues that Herreras' pending files could not have commanded a price on the market because purchasers would have known that Herreras intended to remain in the same market and the clients could return to him notwithstanding the sale; but if this were really a reason why the work in progress had no value, Herreras himself would have had no reason to buy the work in progress from the estate.

The trustee points out that the Supreme Court has stated that "[i]n recognizing that state-law rights that have' pecuniary value and are transferrable fall within § 6321, we do not mean to suggest that .... an expectancy that has pecuniary value and is transferable under state law would fall within § 6321 prior to the time it ripens into a present estate." *Drye* [99–2 USTC ¶ 51,006, 99–2 , USTC ¶ 60,363], *supra* 120 S.Ct. at 482 n. 7. California law, however, treats a lawyer's work in progress as a valuable asset. Herreras' work in progress was thus a present estate, and not a mere expectancy, before he filed his bankruptcy petition.

The trustee also argues that *Connor, supra,* and *Fuller v. United States* [92–1 USTC ¶ 50,119], 134 B.R. 945 (9th Cir. BAP 1992) show that the work in progress is not property under § 6321. The trustee is incorrect. In *Connor,* the lien attached to the future pension payments because the debtor had an unconditional pre-petition right *to* receive the payments. [94–2 USTC ¶ 50,296], 27 F3d at 366. The fact that an unconditional pre-petition right to receive payments is a property right for purposes of § 6321, however, does not imply that a conditional pre-petition right is not a property right for purposes of § 6321. The cases cited above, concerning the status under § 6321 of conditional contract rights, indicate that conditional rights can be subject to a § 6321 lien as well as unconditional rights.

In *Fuller,* the court held that a pre-petition federal tax lien could not attach to an inheritance the debtor received pursuant to a will, where the testator died after the bankruptcy filing. The inheritance was not property within the meaning of 9 6321 because at the time the petition was filed, the testator was alive, and the debtor had no interest in the inheritance at all, conditional or unconditional. *See* [92–1 USTC ¶ 50,119], 134 B.R. at 947–48. The fact that a right having no pre-petition existence at all is not subject to a § 6321 lien does not imply that a right that is conditional before filing of the petition is not subject to such a lien. Herreras had a conditional contractual right to receive fees from his contingent fee clients, and would have retained a contingent right to recover in *quantum meruit* even if the clients had discharged him, *see Fracasse v. Brent,* 6 Cal.3d 784, 791, 100 Cal.Rptr. 385, 494 P.2d 9 (1972).

### B. *The Form of the Proceeding*

The government makes an alternative argument that the proceedings below regarding the tax lien ought not to have gone forward as a motion objecting to a claim; instead, the government argues, the trustee should have been required to bring an adversary proceeding. Because the Court has held for the government on other grounds, it is unnecessary to reach this issue.

*Conclusion*

The order of the Bankruptcy Court for the Central District of California entered June 1, 2000, limiting the Internal Revenue Service's tax lien to $47,620.00 of the assets collected by the trustee, is reversed. The Court hereby orders that the Internal Revenue Service shall have a tax lien attaching to $113,852.00 of assets collected by the trustee, constituting all the proceeds of the sale of the assets of debtor's law practice to debtor.

IT IS SO ORDERED.